PEOPLE v STRONG

ESCAPE—PRISONERS—LAWFUL CUSTODY—CORRECTIONS CENTERS.
A prisoner's unauthorized absence from the downtown YMCA unit of the Detroit Corrections Center was escape from lawful custody; the purpose of the program is the successful integration of prisoners back into society and to attempt a strict construction of the escape statute declaring the YMCA program to be a noncustody situation would defeat its language and the clear intent of the program (MCLA 750.193).

Appeal from Recorder's Court of Detroit, Joseph A. Gillis, J. Submitted Division 1 April 5, 1974, at Detroit. (Docket No. 17883.) Decided May 31, 1974. Leave to appeal denied, 392 Mich —.

Landie Strong was convicted of escape from prison. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Gerard A. Poehlman,* Assistant Prosecuting Attorney, for the people.

*Carl Ziemba,* for defendant on appeal.

Before: BASHARA, P. J., and BRONSON, and CARLAND,* JJ.

REFERENCES FOR POINTS IN HEADNOTE
27 Am Jur 2d, Escape, Prison Breaking and Rescue § 7.
What justifies escape or attempt to escape, or assistance in that regard, 70 ALR2d 1430.
* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

BRONSON, J. Defendant was convicted of the crime of escape, MCLA 750.193; MSA 28.390. He was tried before the court sitting without a jury. On June 11, 1973, he was sentenced to one to five years, to be served consecutively. Defendant brings this appeal as a matter of right.

Defendant had been serving sentences for attempted uttering and publishing. After serving a portion of these sentences at Jackson Prison, he was transferred to the Corrections Center in Detroit where he was to establish an acceptable plan warranting recommendation for parole. He was not on parole at the time of the charged escape.

The Detroit Corrections Division first sent the defendant to the Northwest Correction Center at 4321 Pingree in Detroit. On September 12, 1972, he was transferred to the Downtown YMCA unit of the Detroit Corrections Center. At the time of the charged escape he was very close to the time when formal parole would have been available to him.

The rules at the YMCA are very liberal. It is an effort on the part of the Corrections Commission to effect a gradual release of convicted felons so that they may be better prepared for a permanent return to society in useful and productive capacities. The rules allow a prisoner to have his own room key, sign out for a job, earn money and eat in any place desired. The rules also require that he pay his own rent. While a corrections officer is normally on duty, the officer is not there constantly for the entire 24-hour period. The sign-in, sign-out procedure was strict and only certain predetermined destinations were permitted.

Before turning to the facts and analysis of this appeal, we would like to acknowledge the assistance afforded by the brief and argument of Mr. Carl Ziemba, attorney for defendant-appellant.

The defendant last signed in at 11:20 p. m. on November 5, 1972. He was not seen again until November 13, 1972, when he turned up in the custody of the Detroit Police Department. His absence was noted by the supervisor on November 6, 1972.

Defendant explained that he was accosted at gunpoint and removed from his room by two men. These men allegedly took him and held him for several days until they were sure that he was not the person they were seeking. In addition to this defense, apparently unconvincing to the trier of fact, defendant contends that he may not be charged with escape because he was not, while at the YMCA, in "lawful custody".

The rules and regulations which were provided the defendant while at the YMCA, and of which defendant was obviously aware as indicated by his signature on a copy, provide partially that:

"The Center staff must be aware of the exact destination and purpose of each absence from the Center and will set the time for your return. Absences can be permitted for seeking work, working, attending classes, business, recreation, and social activities. *Unauthorized absence, failure to return at the time set or going to an unauthorized destination are serious violations and prosecution for escape will be considered in such cases.* A destination or required return time may be changed as a result of a telephone request. A resident who is aware that he is or may be late in his return should contact the Center if possible. This will avoid unnecessary contact by staff with family or employer." (Emphasis supplied.)

The escape statute (MCLA 750.193; MSA 28.390) provides:

"Sec. 193. (1) Any person, being imprisoned in any

prison of this state for any term, who shall break prison and escape, or break prison though no escape be actually made, or shall escape, or shall leave the prison without being discharged from the prison by due process of law, or shall attempt to break prison or escape therefrom, shall be guilty of a felony, punishable by further imprisonment for not more than 5 years, such term of further imprisonment to be served after the termination, pursuant to law, of any sentence or sentences then being served. Such prisoner who shall break prison or escape or attempt to break prison or attempt to escape as aforesaid, shall be charged with that offense and tried in the courts of the county wherein are located the administrative offices of the prison or other penal facility to which the prisoner was committed or transferred, at the time of the breaking, escape, or attempt to break or escape.

"(2) The word 'prison' as used in this section shall include any Michigan state prison, penitentiary, reformatory, state house of correction, camp constructed and maintained under the provisions of Act No. 274 of the Public Acts of 1949, as amended, being section 798.351 of the Compiled Laws of 1948, or any penal camp, except probation camps or probation recovery camps, and shall further include the grounds, farms, shops, road camps or places of employment operated by such institution or under control of the officers thereof, or the department of corrections, or of any police officers of this state, or of other persons authorized by the department to have prison inmates under their care, custody or supervision, either in an institution or outside an institution, whether for the purpose of work or medical care or otherwise.

"(3) Escaping from the lawful custody of any guard or prison official or employee while outside the confines of such prison shall be deemed to be a violation of this section. A person who is released from prison under a work pass program and who violates the terms of such release or who fails to return to his place of imprisonment within the time provided is guilty of a violation of this section. Any person violating the conditions of his parole shall not be deemed to be an escapee under the amendatory provisions of this act."

The entire purpose of the program at the YMCA was for the *successful* integration of the defendant back into society. The program of gradual release appears to be a good one which will benefit both the defendant and the public. For us to attempt a strict construction of the escape statute declaring that the YMCA program to be a non-custody situation would defeat the language of the statute and the clear intent of the program. Accordingly we read the statute to make defendant's unauthorized absence an escape from lawful custody.

Affirmed.

All concurred.