PEOPLE v ARMISTED

Docket No. 302902. Submitted October 12, 2011, at Detroit. Decided December 6, 2011, at 9:15 a.m.

Jose Armisted pleaded no contest in the Tuscola Circuit Court, Michael J. Matuzak, J., of furnishing a cellular telephone to a prisoner, MCL 800.283a, and was sentenced as a fourth-offense habitual offender, MCL 769.12, to 1 to 10 years' imprisonment. Defendant's plea was conditioned on his ability to appeal his conviction on the basis that the prohibition did not apply because, according to defendant, the person to whom he had given the telephone had been released on parole and had not been in a correctional facility. Defendant appealed by delayed leave granted.

The Court of Appeals *held*:

1. Under MCL 800.283a, a person may not sell, give, or furnish, or aid in the selling, giving, or furnishing of, a cellular telephone or other wireless communication device to a prisoner in a correctional facility, or dispose of a cellular telephone or other wireless communication device in or on the grounds of a correctional facility. Under MCL 800.281a(g), a "prisoner" is a person committed to the jurisdiction of the Department of Corrections who has not been released on parole or discharged. Because the Legislature specifically excluded from the definition of "prisoner" only those persons "released on parole," as opposed to all parolees or all persons on parole, the term "prisoner" includes all parolees who have not been released. Release on parole requires release into the community. In this case, defendant was assigned to an intermediate facility while on parole, and he provided a cellular telephone to another inmate of the facility. Because the inmates at the intermediate facility had not been released into the community, they remained prisoners within the meaning of MCL 800.281a(g) and MCL 800.283a.

2. In relevant part, MCL 800.281a(e) defines a "correctional facility" as a state prison. A "state prison" is any facility operated by the Department of Corrections to confine or involuntarily restrain persons committed to its jurisdiction. It is the purpose for which a facility is used, and not its label, that determines its essential character as a state prison. The intermediate facility in

which defendant was an inmate, the Tuscola Residential Reentry Program, was operated by the Department of Corrections and was a secure facility from which the inmates could not leave without permission. Accordingly, it was a state prison for the purpose of the prohibition against providing contraband to prisoners. The district court did not abuse its discretion by binding defendant over to the circuit court, and the circuit court did not abuse its discretion by denying defendant's motion to quash the information.

3. Defendant's failure to move to withdraw his plea before the circuit court within six months after sentencing in accord with MCR 6.310(C), or to move for relief from the judgment under MCR 6.500 *et seq.*, precluded appellate review of whether the plea was "coerced."

4. When ineffective assistance of counsel is claimed in the context of a plea, the pertinent inquiry is whether the defendant tendered the plea voluntarily and understandingly. In this case, irrespective of any misstatements by counsel as to defendant's likely minimum sentence, defendant would have been subject to a much greater maximum sentence than the one he actually received had he been tried and convicted. And a party may not create a factual dispute by submitting an affidavit that contradicts his or her own sworn testimony or prior conduct. In this case, while sworn during the plea proceedings, defendant stated that he fully understood the plea and sentencing agreement. Defendant's contrary assertion in his affidavit, submitted eight months after his sentencing, could not establish a basis for appeal in contravention of his earlier sworn statement. Under the circumstances, defendant did not receive ineffective assistance of counsel.

5. Whenever any person is convicted of any crime and has served time in jail before sentencing because of being denied or unable to furnish bond for the offense of which he or she is convicted, the trial court in imposing sentence must specifically grant credit against the sentence for such time served in jail before sentencing. However, upon arrest for a new felony, a parolee continues to serve the unexpired portion of his or her earlier sentence. The parolee is required to remain in jail pending the resolution of the new criminal charge for reasons independent of his or her eligibility for or ability to furnish bond for the new offense. Therefore, when a person on parole commits a subsequent felony and is detained, the time of detention continues to accrue toward the fulfillment of the originally imposed sentence on which parole was granted.

6. Absent an error in scoring the sentencing guidelines or inaccurate information relied upon in determining the defendant's

sentence, a minimum sentence that falls within the appropriate guidelines range must be affirmed on appeal. In this case, defendant argued that his sentence of 1 to 10 years in prison was, although within the guidelines range, disproportionate. However, appellate review of sentences imposed under the legislative sentencing guidelines is limited and does not specifically encompass proportionality. And even if a sentence within the appropriate guidelines range could be deemed disproportionate in unusual circumstances, defendant failed to demonstrate such circumstances.

7. Facts considered in calculating the sentencing guidelines minimum range need not be admitted by the defendant or proven to the trier of fact beyond a reasonable doubt. Defendant was properly sentenced.

Affirmed.

1. PRISONS AND PRISONERS — CONTRABAND — CELLULAR TELEPHONES — PAROLEES.

A person may not sell, give, or furnish, or aid in the selling, giving, or furnishing of, a cellular telephone or other wireless communication device to a prisoner in a correctional facility, or dispose of a cellular telephone or other wireless communication device in or on the grounds of a correctional facility; a "prisoner" is a person committed to the jurisdiction of the Department of Corrections who has not been released on parole or discharged; release on parole requires release into the community; a parolee confined in a intermediate facility has not been released on parole and, therefore, is a prisoner for the purpose of the prohibition against providing cellular telephones to prisoners (MCL 800.281a[g], MCL 800.283a).

2. PRISONS AND PRISONERS — CONTRABAND — CELLULAR TELEPHONES — CORRECTIONAL FACILITIES — STATE PRISONS — INTERMEDIATE FACILITIES.

A person may not sell, give, or furnish, or aid in the selling, giving, or furnishing of, a cellular telephone or other wireless communication device to a prisoner in a correctional facility, or dispose of a cellular telephone or other wireless communication device in or on the grounds of a correctional facility; the term "correctional facility" includes a state prison; a "state prison" is any facility operated by the Department of Corrections to confine or involuntarily restrain persons committed to its jurisdiction; it is the purpose for which a facility is used, and not its label, that determines its essential character as a state prison; a secure intermediate facility operated by the Department of Corrections from which the inmates cannot leave without permission is a

state prison for the purpose of the prohibition against providing cellular telephones to prisoners (MCL 800.281a[e], MCL 800.283a).

*Bill Schuette*, Attorney General, *John J. Bursch*, Solicitor General, *Mark E. Reene*, Prosecuting Attorney, and *Ariana E. Hemerline*, Assistant Prosecuting Attorney, for the people.

*Joseph L. Stewart* for defendant.

Before: OWENS, P.J., and JANSEN and O'CONNELL, JJ.

PER CURIAM. Defendant appeals by delayed leave granted following his conditional no-contest plea to the offense of furnishing a cellular phone to a prisoner, MCL 800.283a, for which he was sentenced as a fourth habitual offender, MCL 769.12, to a prison term of 1 to 10 years. Defendant's no-contest plea was conditioned on the outcome of this appeal. We affirm.

I

On October 26, 2009, a corrections officer working at the Tuscola Residential Reentry Program (TRRP) searched an inmate room and found a cellular phone in the trash can. Matthew Huggard, who was defendant's roommate at TRRP, told an officer at the facility that defendant had given him the cellular phone and that he had used it. Defendant later told the Michigan State Police that it was his phone.

Defendant argued before the district court that he had not furnished a cellular phone to a "prisoner in a correctional facility" within the meaning of MCL 800.283a because the inmates at TRRP are "parolees" rather than prisoners. Defendant thus asserted that he should not be bound over to the circuit court. The

district court determined that there was sufficient probable cause to believe that defendant had committed the crime of furnishing a cellular phone to a prisoner and bound defendant over to the circuit court for further proceedings.

A motion hearing was held before the circuit court judge. The parties stipulated that the inmates at TRRP are classified by the Department of Corrections (the Department) as parolees. Defendant again argued that he had not given a cellular phone to a "prisoner" because the inmates at TRRP are merely parolees. Defendant also argued that TRRP was a community relations program rather than a correctional facility. The circuit court ruled that TRRP inmates are prisoners within the meaning of MCL 800.281a(g) and MCL 800.283a. Defendant then entered his conditional no-contest plea. The parties acknowledged on the record that they had reached a sentencing agreement of 1 to 10 years.

Defendant later submitted an affidavit in which he averred that he was granted parole and released from the Parnell Correctional Facility on September 24, 2009, and that he was subsequently transferred to TRRP. Defendant claimed that he was the only person who had used the cellular phone in question. Defendant also averred that he was effectively coerced into accepting the no-contest plea by his attorney, who had allegedly informed him that he would likely be sentenced to a term of 11 years to life in prison if he did not agree to the plea deal.

II

Defendant first argues that he did not furnish a cellular phone to a "prisoner in a correctional facility" within the meaning of MCL 800.283a because the inmates at TRRP are parolees rather than prisoners

and because TRRP is not a correctional facility. There-
fore, he argues, the district court erred by binding him
over to the circuit court and the circuit court erred by
denying his motion to quash the information.

We review for an abuse of discretion the circuit
court's ruling on a motion to quash the information and
the district court's decision to bind over a defendant to
the circuit court. *People v Hill*, 269 Mich App 505,
513-514; 715 NW2d 301 (2006), overruled in part on
other grounds by *People v Hill*, 486 Mich 658; 786
NW2d 601 (2010). However, if the decision concerns
whether the alleged conduct falls within the scope of a
penal statute, the issue presents a question of law that
we review de novo. *Hill*, 269 Mich App at 514.

Our primary goal when interpreting a statute is to
ascertain and give effect to the intent of the Legislature.
*People v Williams*, 475 Mich 245, 250; 716 NW2d 208
(2006). The first step in determining legislative intent is
to examine the specific language of the statute. *People v
Lively*, 470 Mich 248, 253; 680 NW2d 878 (2004). The
Legislature is presumed to have intended the meaning
that it plainly expressed. *Rowland v Washtenaw Co Rd
Comm*, 477 Mich 197, 219; 731 NW2d 41 (2007). Judi-
cial construction is only appropriate if reasonable minds
could differ concerning the statute's meaning. *People v
Warren*, 462 Mich 415, 427; 615 NW2d 691 (2000).

The Legislature has made it a felony to furnish
certain types of contraband to prisoners in correctional
facilities. See MCL 800.281 *et seq*. This includes a
prohibition against furnishing cellular phones to pris-
oners. MCL 800.283a. In the present case, defendant
entered a conditional no-contest plea to the offense of
furnishing a cellular phone to a prisoner in violation of
MCL 800.283a, which provides:

A person shall not sell, give, or furnish, or aid in the selling, giving, or furnishing of, a cellular telephone or other wireless communication device to a prisoner in a correctional facility, or dispose of a cellular telephone or other wireless communication device in or on the grounds of a correctional facility.

There is no question that defendant possessed a cellular phone while he was an inmate at TRRP. Instead, the pertinent questions are whether the inmate to whom defendant allegedly furnished the phone was a prisoner and whether TRRP is a correctional facility.

A

For the reasons that follow, we conclude that the inmates at TRRP are "prisoner[s]" within the meaning of MCL 800.283a.

For purposes of MCL 800.281 *et seq.*, the Legislature has defined the term "prisoner" as "a person committed to the jurisdiction of the department [of corrections] who has not been released on parole or discharged." MCL 800.281a(g). It is undisputed that the persons housed at TRRP have all been committed to the Department's jurisdiction and, as parolees, are subject to the Department's rules. See MCL 791.238(1) (stating that prisoners on parole remain in the Department's legal custody); MCL 791.206(1)(c) (granting the Department authority to promulgate rules concerning the supervision and control of parolees). Similarly, it is uncontested that the persons housed at TRRP have not been "discharged" from the Department's jurisdiction. Thus the only dispute concerns whether the persons housed at TRRP have been "released on parole" as that phrase is used in MCL 800.281a(g).

Michigan courts have long recognized that a grant of parole generally constitutes permission to leave con-

finement with certain restrictions. See *In re Dawsett*, 311 Mich 588, 595; 19 NW2d 110 (1945) (stating that parole is simply a permit to leave the enclosure of the prison, and not a release); see also *People v Raihala*, 199 Mich App 577, 579; 502 NW2d 755 (1993) (characterizing the grant of parole as a "conditional release" from prison). However, it is noteworthy that in drafting MCL 800.281a(g), the Legislature did not exclude all parolees or persons on parole from the definition of "prisoner." Instead, it excluded only those persons who have been "released on parole." This Court must, if possible, construe the phrase "released on parole" by giving meaning to each word in the phrase. *Bush v Shabahang*, 484 Mich 156, 167; 772 NW2d 272 (2009). Because the Legislature specifically excluded from the definition persons "released on parole"—as opposed to all parolees or all persons on parole—we conclude that the Legislature intended to limit the exclusion to a specific class of parolees rather than apply it to parolees in general. That is, we construe the term "prisoner" as defined in MCL 800.281a(g) to include all parolees who have not yet been released. For this reason, we reject the notion that any person who is on parole is not a "prisoner" within the meaning of MCL 800.281a(g).

Our understanding of the phrase "released on parole" is consistent with the Legislature's decision to place separate requirements on the grant of parole and the release of a parolee. See MCL 791.233(1); MCL 791.238(6). In particular, MCL 791.238(6) provides that "[a] parole shall be construed as a permit to the prisoner to leave the prison, *and not as a release*." (Emphasis added.) Likewise, the Legislature has provided that a parolee may not be released from custody until the parole board has satisfactory evidence that arrangements have been made for the parolee's employment, education, or care, MCL 791.233(1)(e), that pa-

rolees may be retained in custody under certain circumstances, MCL 791.233(2), and that the parole board has the authority to rescind a parole order before a parolee is released into the community, MCL 791.236(2). In similar fashion, this Court has recognized the distinction between being *granted* parole and being *released* on parole. See *Wayne Co Prosecutor v Parole Bd*, 210 Mich App 148, 154; 532 NW2d 899 (1995). Specifically, we have observed that even after parole is granted, it is not unreasonable to impose additional requirements before the parolee is actually released. *Id.*; see also MCL 791.233(1)(e). Quite simply, the *grant* of parole and a parolee's *release* after being paroled are two different things under Michigan law, which plainly recognizes that a person who has been granted parole might nevertheless remain in custody.

There is also a compelling policy reason for differentiating between all parolees and parolees who have been released into the community. The purpose underlying MCL 800.281 *et seq.* is to keep contraband out of state correctional facilities and to ensure order and discipline within those facilities. See *People v Krajenka*, 188 Mich App 661, 664; 470 NW2d 403 (1991). This purpose would be undermined if we were to construe the phrase "released on parole" as including all parolees, and, on that basis, to conclude that parolees who remain in custody are not prisoners within the meaning of MCL 800.281a(g). The Legislature has determined that parolees who have not yet been released into the community should be treated as "prisoners" for purposes of the statutory ban on contraband in correctional facilities, and this Court will respect that policy choice.

Nor can we conclude that the statutory phrase "released on parole" refers to a prisoner's release to

an intermediate facility such as TRRP rather than a parolee's ultimate release into the community. We must construe the phrase "released on parole" according to its plain and ordinary meaning. MCL 8.3a; *Brackett v Focus Hope, Inc*, 482 Mich 269, 276; 753 NW2d 207 (2008). A person of ordinary intelligence would understand the phrase "released on parole" to mean released from confinement—that is, released into the community—and would not consider a transfer from one of the Department's secured facilities to another of the Department's secured facilities to constitute being "released on parole." See *Random House Webster's College Dictionary* (1997) (defining "release" to mean, in relevant part, "to free from confinement [or] bondage"). This is true even if the facility to which the prisoner is transferred has less severe restrictions and is intended as an intermediate step before release into the community at large. And the statutes governing parole lend support to our conclusion that being "released on parole" means being released into the community. See MCL 791.237(1) (requiring the Department to provide a prisoner who is released on parole with clothing and a nontransferable ticket to the place where the prisoner is to reside and providing discretion to give the prisoner an advance of money for a 2-week period). In short, we conclude that the phrase "released on parole" in MCL 800.281a(g) refers to a parolee's ultimate release into the community at large.

Although the inmates at TRRP are on parole, they have not been released from confinement or sent into the community at large. Therefore, TRRP inmates have not been "released on parole" and they remain prisoners within the meaning of MCL 800.281a(g) and MCL 800.283a.

B

We also conclude that TRRP is a "correctional facility" within the meaning of MCL 800.283a.

To be guilty of violating MCL 800.283a, a person must have furnished a cellular phone or wireless device to a prisoner in a "correctional facility." MCL 800.281a(e) defines a "correctional facility" as:

> (*i*) A state prison, reformatory, work camp, or community corrections center.
>
> (*ii*) A youth correctional facility operated by the department or a private vendor . . . .
>
> (*iii*) A privately operated community corrections center or resident home which houses prisoners committed to the jurisdiction of the department.
>
> (*iv*) The land on which a facility described in subparagraph (*i*), (*ii*), or (*iii*) is located.

TRRP is not a privately operated facility and is plainly not a youth correctional facility. Thus, the pertinent definition for purposes of this case is that provided by MCL 800.281a(e)(*i*).

The Legislature has not defined the term "state prison" within the text of MCL 800.281 *et seq.*, but has defined the term "prison" elsewhere. For example, MCL 750.193(2) defines "prison" as "a facility that houses prisoners committed to the jurisdiction of the department of corrections . . . ." Immediately before its amendment by way of 1998 PA 510, MCL 750.193(2) defined "prison" in pertinent part as "a state prison, penitentiary, reformatory, state house of correction, *community residential center* either operated or leased by the department of corrections, or a penal camp . . . ." Former MCL 750.193(2) (emphasis added). Similarly, various Michigan courts have examined what constitutes a prison for purposes of MCL 750.193, the prison

escape statute. For instance, in *People v Mayes*, 95 Mich App 188, 190; 290 NW2d 119 (1980), this Court concluded that "a halfway house is a prison" for purposes of the escape statute, and in *People v Granquist*, 183 Mich App 343, 346; 454 NW2d 207 (1990), this Court determined that a defendant's own place of residence constituted a "prison" for purposes of the escape statute because the defendant's apartment was under the Department's surveillance by way of electronic monitoring. This Court has also held that a YMCA corrections program and a community corrections program can constitute prisons within the meaning of the escape statute. *People v Johnson*, 96 Mich App 84, 87-88; 292 NW2d 489 (1980); *People v Strong*, 53 Mich App 620, 624; 219 NW2d 804 (1974).

While these definitions may provide some evidence of the Legislature's intent, they are not dispositive for purposes of interpreting the term "state prison" as it is used in MCL 800.281a(e)(*i*). It therefore remains our duty to interpret the term "state prison" in MCL 800.281a(e)(*i*) according to its ordinary and commonly understood meaning. MCL 8.3a; *Brackett*, 482 Mich at 276. A "prison" is commonly understood to be "a building for the confinement of accused persons awaiting trial or persons sentenced after conviction" or "any place of confinement or involuntary restraint." *Random House Webster's College Dictionary* (1997). It follows that a "state prison" is a prison operated by the state of Michigan—that is, by the Department. We conclude that a "state prison" is any facility operated by the Department to confine or involuntarily restrain persons committed to its jurisdiction.

It is the purpose for which a facility is used, and not its exact name or label, that determines its essential character as a state prison. See *People v Gobles*, 67 Mich

475, 479; 35 NW 91 (1887) (observing that "[a]lthough the prison at Ionia is called 'a house of correction and reformatory,' it is no less than a [s]tate prison"). The specific name given to TRRP is therefore irrelevant. Instead, we must examine the actual purposes for which the facility is used. TRRP is operated by the Department and designed to involuntarily restrain or confine persons committed to its jurisdiction while those persons receive certain remedial services designed to help them transition into the community at large. The fact that the persons confined at TRRP are parolees and will eventually be released into the community (assuming that they meet the requirements for release) does not alter the fact that TRRP is a secure facility from which the inmates cannot leave without permission. We conclude that TRRP is a state prison within the meaning of MCL 800.281a(e)(*i*), and therefore a correctional facility within the meaning of MCL 800.283a.[1]

C

Before accepting defendant's no-contest plea, the circuit court was required to establish a factual basis for the plea. MCR 6.302(D)(2)(b); see also *People v Holmes*, 181 Mich App 488, 490; 449 NW2d 917 (1989). Similarly, to bind over defendant to the circuit court, the

---

[1] In light of our conclusion that TRRP constitutes a state prison within the meaning of MCL 800.281a(e)(*i*), we need not decide whether it is also a reformatory or community corrections center within the meaning of the statute. However, we note that a "community corrections center" is defined merely as "a facility either contracted for or operated by the department [of corrections] in which a security staff is on duty 7 days per week, 24 hours per day." MCL 791.265a(9)(a). It appears from the record that the TRRP inmates are monitored or guarded 24 hours a day and seven days a week. Thus, although we do not decide the issue, it would appear that TRRP also qualifies as a community corrections center within the meaning of MCL 800.281a(e)(*i*).

district court was required to determine that there was "probable cause to believe that a felony was committed and that the defendant committed the offense." *People v Jenkins*, 244 Mich App 1, 14; 624 NW2d 457 (2000); see also MCL 766.13; MCR 6.110(E). As noted earlier, defendant does not deny that he possessed a cellular phone while he was an inmate at TRRF. Rather, he claims only that his conduct did not fall within the prohibitions of MCL 800.283a.

As already explained, the inmate to whom defendant allegedly provided the cellular phone at issue was a "prisoner in a correctional facility" within the meaning of MCL 800.283a. Accordingly, we conclude that there was probable cause to believe that defendant had furnished a cellular phone to a prisoner in violation of MCL 800.283a and that there was a sufficient factual basis to support defendant's no-contest plea in this case. The district court did not abuse its discretion by binding over defendant to the circuit court and the circuit court did not abuse its discretion by denying defendant's motion to quash the information. *Hill*, 269 Mich App at 513-514.

III

Defendant next argues that his no-contest plea was involuntary as the result of "undue coercion" and that he should therefore be permitted to withdraw the plea. Defendant also claims that his trial attorney coerced him into accepting the plea with threats of a long prison sentence and that his attorney rendered ineffective assistance of counsel in this regard.

Defendant did not timely seek to withdraw his plea or challenge the voluntariness of his plea before the circuit court. Nor did defendant challenge the effectiveness of

his trial attorney or seek a *Ginther*[2] hearing with regard to his claim of ineffective assistance of counsel. These issues are therefore unpreserved for appellate review. MCR 6.310(D); *People v Sabin (On Second Remand)*, 242 Mich App 656, 658-659; 620 NW2d 19 (2000); see also *People v Nowicki*, 213 Mich App 383, 385; 539 NW2d 590 (1995).

We review unpreserved claims, both constitutional and nonconstitutional, for outcome-determinative plain error. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999); *People v Hanks*, 276 Mich App 91, 92; 740 NW2d 530 (2007). We review unpreserved claims of ineffective assistance of counsel for errors apparent on the record. *People v Unger*, 278 Mich App 210, 253; 749 NW2d 272 (2008).

A

Defendant argues that he should be permitted to withdraw his no-contest plea for the reason that it was involuntary. Specifically, he contends that his trial attorney coerced him into accepting the plea by threatening him with the prospect of a longer prison sentence if he did not agree to the plea deal.

In response to the circuit court's questioning at the plea proceeding, defendant stated on the record that he understood that there was a sentencing agreement of 1 to 10 years, that he did not know what the court's actual sentence would be, and that he had not been threatened or promised any favors or leniency in exchange for his plea. On appeal, defendant does not argue that he did not understand the plea to which he agreed. Instead, he contends merely that he was somehow "coerced" into accepting the plea when his trial

---

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

attorney allegedly informed him that he would likely be sentenced to a term of 11 years to life in prison if he was tried and ultimately convicted of furnishing a cellular phone to a prisoner.

Furnishing a cellular phone to a prisoner in violation of MCL 800.283a is a Class E offense, for which the statutory maximum sentence is five years. MCL 777.17g. However, as a fourth habitual offender, defendant was subject to enhanced sentencing, including a 100 percent increase in the upper limit of the recommended minimum sentence range, MCL 777.21(3)(c), and a maximum sentence of any number of years or life, MCL 769.12(1)(a).

As for defendant's maximum sentence, defendant alleges that his attorney informed him that he could receive a maximum sentence of life in prison if convicted. As just set forth, counsel was correct in this regard. As a fourth habitual offender, defendant was subject to a maximum sentence of any number of years or life. MCL 769.12(1)(a).

With respect to defendant's minimum sentence, defendant contends that his attorney informed him that he would likely receive a minimum sentence of 11 years. This information does not appear to be correct. The sentencing information report contained in the circuit court file indicates that defendant had a total prior record variable (PRV) score of 50 and a total offense variable (OV) score of 20. Thus, after doubling the upper limit of the recommended minimum sentence range on account of defendant's status as a fourth habitual offender, defendant was subject to a minimum term of incarceration of between 10 and 46 months if sentenced within the guidelines. MCL 777.21(3)(c); MCL 777.66. In other words, if defendant were sentenced within the guidelines, his minimum sentence

could not have exceeded 46 months (3 years and 10 months), and certainly would not have been 11 years.

The problem with defendant's argument, of course, is that he never sought to withdraw his plea in the circuit court. Under MCR 6.310(C), defendant was required to move to withdraw his plea within six months after sentencing or to move for relief from judgment according to the procedures set forth in MCR 6.500 *et seq.* Defendant's affidavit dated February 14, 2011, filed eight months after his sentencing, did not comply with this court rule. Because defendant failed to file a motion to withdraw his plea in the circuit court, appellate review of this issue is precluded. MCR 6.310(D); *People v Dixon*, 217 Mich App 400, 410; 552 NW2d 663 (1996).

B

Defendant also argues that his trial attorney rendered ineffective assistance of counsel by incorrectly informing him that he would be subject to a minimum sentence of 11 years if tried and convicted and by using this misinformation to coerce him into accepting the plea deal. We simply cannot agree.

"When ineffective assistance of counsel is claimed in the context of a plea, the pertinent inquiry is whether the defendant tendered the plea voluntarily and understandingly." *People v Swirles (After Remand)*, 218 Mich App 133, 138; 553 NW2d 357 (1996). We fully acknowledge that defendant averred in his affidavit that trial counsel had informed him that, if convicted of the charge of furnishing a cellular phone to a prisoner, he would likely be sentenced to a term of 11 years to life in prison. As noted previously, assuming that counsel actually made this representation to defendant, it appears that counsel was mistaken with respect to the minimum sentence.

However, irrespective of any misstatements by counsel, the fact remains that defendant would have been subject to a much greater maximum sentence than the one he actually received had he been tried and ultimately convicted. See MCL 769.12(1)(a). Moreover, defendant does not argue that any failures of trial counsel actually kept him from understanding the plea to which he agreed. Indeed, defendant testified under oath at the plea proceeding that he fully understood the plea and sentencing agreement. Just as a party or witness may not create a factual dispute by submitting an affidavit that contradicts his or her own sworn testimony or prior conduct, *Dykes v William Beaumont Hosp*, 246 Mich App 471, 480; 633 NW2d 440 (2001); *Palazzola v Karmazin Products Corp*, 223 Mich App 141, 155; 565 NW2d 868 (1997), we conclude that defendant's affidavit dated February 14, 2011, was insufficient to contradict or overcome his previous sworn statements at the plea proceeding of April 12, 2010. Given defendant's unequivocal confirmation in open court that he understood the plea and sentencing agreement, we cannot conclude that defendant's counsel was ineffective. See *Swirles*, 218 Mich App at 138-139.

IV

Defendant next argues that the circuit court erred by failing to award him credit for time served in jail. We disagree.

Whether a defendant is entitled to credit for time served in jail before sentencing is a question of law that we review de novo. *People v Waclawski*, 286 Mich App 634, 688; 780 NW2d 321 (2009).

Defendant argues that he should have been credited for time served before sentencing according to MCL 769.11b, which provides:

> Whenever any person is hereafter convicted of any crime within this state and has served any time in jail prior to sentencing because of being denied or unable to furnish bond for the offense of which he is convicted, the trial court in imposing sentence shall specifically grant credit against the sentence for such time served in jail prior to sentencing.

As explained earlier, although defendant had not yet been released into the community, he was technically on parole while he was an inmate at TRRP. Thus, it necessarily follows that defendant was on parole at the time he committed the instant offense of furnishing a cellular phone to a prisoner.

MCL 768.7a(2) provides:

> If a person is convicted and sentenced to a term of imprisonment for a felony committed while the person was on parole from a sentence for a previous offense, the term of imprisonment imposed for the later offense shall begin to run at the expiration of the remaining portion of the term of imprisonment imposed for the previous offense.

MCL 769.11b, the jail credit statute, is not applicable when a parolee is convicted and sentenced to a new term of imprisonment for a felony committed while on parole because, once arrested for the new felony, the parolee continues to serve out the unexpired portion of his or her earlier sentence. *People v Idziak*, 484 Mich 549, 562-563; 773 NW2d 616 (2009). When a person on parole commits a subsequent felony and is detained, the time of detention continues to accrue toward the fulfillment of the originally imposed sentence on which parole was granted. MCL 791.238(1), (2), and (6); *People v Johnson*, 283 Mich App 303, 308-310; 769 NW2d 905 (2009). The parolee is required to remain in jail pending the resolution of the new criminal charge for reasons independent of his or her eligibility for or ability to furnish bond for the new offense; therefore, the jail credit

statute does not apply. *Idziak*, 484 Mich at 566-567. Defendant is entitled to no relief on this issue.

V

Defendant next argues that even though his sentence of 1 to 10 years in prison falls within the statutory sentencing guidelines, it is disproportionate to the relatively benign nature of the offense of which he was convicted. We cannot agree.

We review for an abuse of discretion whether a sentence is proportionate to the seriousness of the offense. See *People v Crawford*, 232 Mich App 608, 621-622; 591 NW2d 669 (1998). A sentence that falls within the appropriate sentencing guidelines range is presumptively proportionate. *People v Powell*, 278 Mich App 318, 323; 750 NW2d 607 (2008).

Under the judicial sentencing guidelines that were in effect before 1999, the rule in Michigan was that even a sentence falling within the guidelines could conceivably be disproportionate in "unusual circumstances." *People v Milbourn*, 435 Mich 630, 661; 461 NW2d 1 (1990). However, it does not appear that this "unusual circumstances" rule of *Milbourn* has survived the Legislature's enactment of the statutory sentencing guidelines, MCL 777.1 *et seq*.[3] See *People v Hegwood*, 465 Mich 432, 439; 636 NW2d 127 (2001) (noting that the principles and ground rules governing the application of the former judicial sentencing guidelines do not necessarily govern the application of the statutory sentencing guidelines); *People v Babcock*, 244 Mich App 64, 73; 624 NW2d 479 (2000) (observing that, in enacting the statutory guidelines, "the Legislature

---

[3] The Legislature enacted the statutory sentencing guidelines in 1998, and they took effect on January 1, 1999. 1998 PA 317; see also *People v Hegwood*, 465 Mich 432, 438-439; 636 NW2d 127 (2001).

intended to preclude any appellate scrutiny of sentences falling within the appropriate guidelines range absent scoring errors or reliance on inaccurate information"). Under the statutory sentencing guidelines, this Court must affirm a minimum sentence that falls within the appropriate guidelines range "absent an error in scoring the sentencing guidelines or inaccurate information relied upon in determining the defendant's sentence." MCL 769.34(10); see also *People v Kimble*, 470 Mich 305, 310-311; 684 NW2d 669 (2004). Conspicuously absent from Michigan's current sentencing statutes is any mention of the principle of proportionality or any discussion of factors that would render an otherwise proper sentence disproportionate.[4]

As noted earlier, considering defendant's total PRV and OV scores, and given his status as a fourth habitual offender, defendant was subject to a recommended minimum sentence of between 10 and 46 months. MCL 777.21(3)(c); MCL 777.66. Thus, defendant's minimum sentence of one year fell squarely within the statutory sentencing guidelines range. Defendant does not argue on appeal that the circuit court erred in scoring the guidelines or that the court relied on inaccurate information during sentencing. We must therefore affirm defendant's minimum sentence in this case. MCL 769.34(10).

Nor do we perceive any error in the circuit court's determination of defendant's maximum sentence.[5] As

---

[4] Even assuming arguendo that the "unusual circumstances" rule of *Milbourn* has survived the enactment of the statutory sentencing guidelines, defendant has simply failed to demonstrate the existence of any unusual circumstances that would render his sentence disproportionate to the crime of which he was convicted. See *People v Lee*, 243 Mich App 163, 187-188; 622 NW2d 71 (2000); *People v Daniel*, 207 Mich App 47, 54; 523 NW2d 830 (1994); *People v Sharp*, 192 Mich App 501, 505-506; 481 NW2d 773 (1992).

[5] It is only the *minimum* sentence that must be within the appropriate sentencing guidelines range. MCL 769.34(2); *People v Babcock*, 469 Mich 247, 255 n 7; 666 NW2d 231 (2003).

already explained, the felony of furnishing a cellular phone to a prisoner in violation of MCL 800.283a carries a statutory maximum sentence of five years. MCL 777.17g. However, as a fourth habitual offender, defendant was subject to a maximum sentence of any number of years or life. MCL 769.12(1)(a). We cannot conclude that the circuit court abused its discretion by setting defendant's maximum sentence at 10 years. See *id.*; see also *People v Babcock*, 469 Mich 247, 255 n 7; 666 NW2d 231 (2003).

VI

Lastly, relying on *Blakely v Washington*, 542 US 296; 124 S Ct 2531; 159 L Ed 2d 403 (2004), and *Apprendi v New Jersey*, 530 US 466; 120 S Ct 2348; 147 L Ed 2d 435 (2000), defendant argues that the circuit court erred to the extent that it calculated his sentence on the basis of certain facts that were not admitted by defendant or proven to the trier of fact beyond a reasonable doubt. Our Supreme Court has repeatedly rejected this very argument. *People v McCuller*, 479 Mich 672, 683; 739 NW2d 563 (2007); *People v Drohan*, 475 Mich 140, 163-164; 715 NW2d 778 (2006). And although defendant insists that *McCuller* and *Drohan* were wrongly decided, this Court is without authority to reverse decisions of the Michigan Supreme Court. *People v Mitchell*, 428 Mich 364, 369-370; 408 NW2d 798 (1987); *Ratliff v Gen Motors Corp*, 127 Mich App 410, 416; 339 NW2d 196 (1983).

Affirmed.

OWENS, P.J., and JANSEN and O'CONNELL, JJ., concurred.