*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ANDREW JAY BOYLE, JR.,

Defendant-Appellant.

UNPUBLISHED
June 04, 2026
1:51 PM

No. 371301
Kent Circuit Court
LC No. 21-007690-FH

Before: REDFORD, P.J., and WALLACE and LIEVENSE, JJ.

PER CURIAM.

Defendant, Andrew Jay Boyle, Jr., appeals by leave granted[1] his sentences for his jury trial convictions of unlawful imprisonment, MCL 750.349b, and assault with a dangerous weapon (felonious assault), MCL 750.82. Defendant was acquitted of an additional charge of assault with the intent to commit criminal sexual conduct (CSC) involving sexual penetration, MCL 750.520g(1). On appeal, defendant argues the trial court improperly considered acquitted conduct when sentencing him. We affirm.

## I. FACTUAL BACKGROUND

On July 28, 2021, the victim had left a grocery store and was in the parking lot about to leave in her vehicle when she was approached by defendant. The parties do not dispute that defendant approached the victim carrying a knife and ordered her to "get out" of the vehicle.

---

[1] *People v Boyle*, unpublished order of the Court of Appeals, entered January 6, 2025 (Docket No. 371301). We note that, after leave was granted and defendant filed his brief, defendant moved to add an issue on appeal and filed a supplemental brief, we denied that motion, defendant moved for reconsideration, and we denied that motion too. As a result, we do not address the issue raised in his supplemental brief, except to note that in that brief defendant asked us to grant relief because he believes *People v Idziak*, 484 Mich 549; 773 NW2d 616 (2009) was wrongly decided. We are unable to overturn Michigan Supreme Court precedent. *People v Armisted*, 295 Mich App 32, 53; 811 NW2d 47 (2011).

Defendant did not make any sexual comments or sexual advances toward the victim. The victim testified that she believed defendant was attempting to steal her truck. She kicked her leg toward defendant and, once he backed away, closed her car door. Defendant immediately returned to his own vehicle and left the scene. The interaction lasted less than two minutes. The victim drove home and later called the police.

Defendant was arrested and subsequently charged as discussed above. At trial, through witness testimony, the prosecution admitted evidence of defendant's two previous convictions for sexual assault with the intent to commit CSC involving sexual penetration. Specifically, two women testified that, in 2006, defendant attempted to enter their homes in unrelated incidents. After his arrest related to these incidents, defendant confessed that his intent in those interactions was to enter their homes and have forcible sex with them. Defendant was subsequently convicted of two counts of assault with the intent to commit CSC involving sexual penetration. This Court affirmed those convictions.[2]

At trial, in the instant case, two of defendant's roommates testified for the prosecution that defendant had confessed to struggling with sexual urges. A sheriff's deputy testified regarding the investigation of this incident and defendant's confession during an interview to assaulting the victim, though defendant did not disclose to the sheriff why he approached the victim. The jury convicted defendant of felonious assault and unlawful imprisonment but acquitted him of assault with the intent to commit CSC involving sexual penetration.

The presentencing investigation report (PSIR) indicated that defendant had requested to go through "behavior remodification programming." At sentencing, defendant renewed this request to the court, stating that he "would very much like . . . to be able to do that behavioral remodification programming" because he believed the program would allow him to "go from an unhealthy behavior to a healthy behavior about [his] lifestyle." On the basis of this request, the trial court ordered defendant to undergo treatment under the Michigan Sex Offenders Program.

After defendant's allocution at his sentencing hearing, wherein he explained that he committed the offense because he was going to cut his tether and flee Michigan because he felt his parole was threatened, the trial court stated the following regarding its justification for defendant's sentence:

> And I agree, you have a troubling way of criminal thinking, and you said, you know for the life of me I can't figure out why, and that to me is the frightening aspect of this offense is I don't know why you did that. I don't know why after a week of, you know, maybe your parole being threatened and you're feeling under stress and you say, I just don't . . . and *I guess if you say, okay, maybe I was going to steal that truck and drive it out of state and cut off my tether, you know, thus what I really was, you know, seeing there was some version of an armed robbery. I'm not sure it's necessarily better for you, but, you know, at least it's an explanation and it's not that you intended to commit another sexual assault because, you know, you've*

---

[2] See *People v Boyle*, unpublished per curiam opinion of the Court of Appeals, issued June 23, 2009 (Docket No. 281047).

*got three prior sexual assaults on your record.* There certainly is, you know, the two . . . approaches of the women in their homes, and then one prior to that, which I did not read the details on. I just got the two that I heard at trial.

And the . . . thing that strikes me there is the . . . fright that goes into that on the victim's side of it, which I have to look at myself in that when you approach them, of course, they don't know your life story or anything else. They just know that you've got some bad intentions and they're vulnerable to that because they're women, because they're by themselves, and your targets have been women that have been in . . . alone or all alone type situations. So that makes me fearful, as well, for, you know, what . . . how are you going to react in society. Fortunately, the parole process does give you some supervised time out there. They do at least, I believe, have access to the treatment that you need, but at the end of day, [defendant], it's got . . . to come from you.

\* \* \*

And certainly, you know, this . . . didn't turn any worse than it did purely because you picked the wrong woman. This was a woman that lived on a farm, and she simply kicked you out of that door and got out of there, and then later it hit her how scared she was, but, you know, in the moment, she wasn't going to be a victim, and so that's credit to her. (Emphasis added.)

Defendant was sentenced as a fourth-offense habitual offender, MCL 769.12, to concurrent terms of 5 to 15 years' imprisonment for the unlawful imprisonment and felonious assault convictions, consecutive to any parole violation sentence. His sentences were within the recommended sentencing guidelines ranges.

He later moved to correct his sentences, arguing that the trial court partially relied on acquitted conduct when sentencing him. The trial court denied defendant's motion. It stated, among other things, that it "wasn't weighted [sic] by that acquitted conduct," had sentenced defendant on the basis of the "totality" of defendant's circumstances, which included the prior convictions for assault with the intent to commit criminal sexual penetration, and "took him at his word [regarding his mindset] and that it wasn't to commit a sexual assault in that case." This appeal followed.

## II. CONSIDERATION OF ACQUITTED CONDUCT

### A. STANDARD OF REVIEW

A preserved question of whether the trial court considered acquitted conduct in sentencing a defendant presents a constitutional question that we review de novo. *People v Brown*, 339 Mich App 411, 419; 984 NW2d 486 (2021). "If the claim involves factual findings by the trial court, then we review those findings under a clear-error standard." *Id.* (citation omitted). "Clear error exists when the reviewing court is left with the definite and firm conviction that a mistake has been made." *People v Davis*, 509 Mich 52, 68; 983 NW2d 325 (2022) (quotation marks and citation omitted).

## B. DISCUSSION

Our Supreme Court held in *People v Beck*, 504 Mich 605, 629-630; 939 NW2d 213 (2019), that trial courts cannot make factual findings at sentencing on the basis of "acquitted conduct." *People v Beesley*, 337 Mich App 50, 61-62; 972 NW2d 294 (2021). " 'Acquitted conduct' means any 'conduct . . . underlying charges of which [the defendant] had been acquitted.' " *People v Roberts (On Remand)*, 331 Mich App 680, 688; 954 NW2d 221 (2020), rev'd on other grounds 506 Mich 938 (2020). "Consequently, a sentencing court must consider a defendant as having undertaken no act or omission that a jury could have relied upon in finding the essential elements of any acquitted offense were proved beyond a reasonable doubt." *Beesley*, 337 Mich App at 62 (quotation marks and citation omitted). Therefore, "a sentencing court may not rely even in part on acquitted conduct when imposing a sentence for the defendant's conviction." *People v Stokes*, 333 Mich App 304, 310; 963 NW2d 643 (2020). Trial courts, however, retain discretion to consider uncharged conduct at sentencing. *Beesley*, 337 Mich App at 62.

Defendant argues that he is entitled to resentencing because the trial court improperly found when it sentenced him that he had the intent to commit a sexual offense in violation of *Beck*, or that it erred by considering his intent ambiguous in light of his acquittal. Specifically, he argues that the trial court implied that defendant intended a sexual assault, and a sexual assault would have occurred, but for the victim's actions. He points to the court's determination that defendant had targeted women in his previous criminal convictions and the sentencing provision requiring defendant to undergo behavior remodification. We disagree.

Defendant was convicted of unlawful imprisonment and felonious assault but acquitted of assault with the intent to commit CSC involving sexual penetration. "[T]he elements of assault with intent to commit CSC involving penetration are simply (1) an assault, and (2) an intent to commit CSC involving sexual penetration." *People v Nickens*, 470 Mich 622, 627; 685 NW2d 657 (2004). "To convict a person of felonious assault, the prosecution must prove (1) an assault, (2) with a dangerous weapon, and (3) with the intent to injure or place the victim in reasonable apprehension of an immediate battery." *People v McKewen*, 516 Mich 23, 31; ___ NW3d ___ (2024) (quotation marks and citation omitted). "An assault is made out from either an attempt to commit a battery or an unlawful act which places another in reasonable apprehension of receiving an immediate battery." *Nickens*, 470 Mich at 628 (quotation marks and citations omitted).

As such, "intent" was a necessary element in both the felonious assault and assault with intent to commit criminal sexual penetration charges. *McKewen*, 516 Mich at 31; *Nickens*, 470 Mich at 627. While defendant faults the trial court for discussing his intent in threatening the victim with a knife, the trial court's consideration of his intent insofar as he committed an "assault" was relevant, perhaps even necessary, to fashion a sentence for his conviction of felonious assault. *McKewen*, 516 Mich at 31. The fact that two criminal offenses have overlapping elements does not mean that the trial court cannot consider that element for criminal offenses he has been convicted of. Such a "categorical approach" to analyzing acquitted conduct under *Beck* would lead to "absurd results." *Brown*, 339 Mich App at 423 ("If [a] categorical approach were to be adopted, then this would mean that any fact or circumstance related to any element of the acquitted crime would be off-limits at sentencing, even if the same fact or circumstance was also related to the convicted crime.").

In *People v Boukhatmi*, a recent case discussing *Brown*, this Court explained that sentencing courts "should use a test akin to the rational-jury standard employed in double-jeopardy cases, which requires an examination of the record to determine whether the jury grounded its verdict on conduct the trial court deemed relevant at trial[.]" *People v Boukhatmi*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 363998); slip op at 5. As explained in *Brown*:

> [U]nder the rational-jury approach, the sentencing court could consider facts and circumstances that were not, in a practical sense, put in dispute at trial, as long as those facts and circumstances were otherwise consistent with the jury's acquittal on a particular charge. Moreover, if a specific fact or circumstance was relevant to both the acquitted charge and the convicted charge—i.e., if there was an overlap of relevant conduct—then the trial court could consider that fact or circumstance when sentencing on the convicted charge. This rational-jury standard appears to be consistent with *Beck* and its progeny, and it is a workable standard that trial courts can use when sentencing a defendant who was convicted of a particular charge but also acquitted of another related charge. [*Brown*, 339 Mich App at 425.]

Applying *Brown* here, the trial court would have violated *Beck* had it determined that defendant acted "with the intent to commit CSC involving sexual penetration," or language to that effect.

But our review of the record does not indicate that the trial court did so when it discussed defendant's intent—an overlapping circumstance relevant to both the acquitted charge and convicted charge—during sentencing. *Brown*, 339 Mich App at 425. During its discussion, the court expressly considered defendant's explanation for the offense, that he was going to steal the victim's truck, cut his tether, and drive out of state, conduct that involved the threat of violence and theft. And it acknowledged the impact of that conduct on his victim, who, fortunately for her, fought back. The trial court also acknowledged having heard evidence at trial of the possible intent to commit a sexual assault. But it did not suggest that it believed he had acted with that intent.

The court then discussed that it had reviewed the details of defendant's prior convictions to determine that defendant had a history of victimizing women in general, which it was permitted to do. *People v Boykin*, 510 Mich 171, 183; 987 NW2d 58 (2022) (sentencing courts may consider prior offenses at sentencing because "the sentence should be tailored to the particular circumstances of the case and offender"). While defendant believes the court's imposition of behavior remodification as part of its sentence as supporting his position, he overlooks that he requested that provision, as reflected in both the PSIR and at sentencing, and the PSIR indicated that defendant was "sexually preoccupied." Further evidence that the trial court did not rely on acquitted conduct is that, unlike in *Beck*, it imposed a sentence within the sentencing guidelines range. *Beesley*, 337 Mich App at 64.

The court's considerations do not indicate improper reliance on any "acquitted conduct" related to the assault with the intent to commit CSC involving penetration. *Beck*, 504 Mich at 629. At the hearing on defendant's motion to correct his sentence, the trial court "reexamine[d]" its thinking and explained that defendant's previous convictions provided "a basis to articulate, as [it] did at sentencing, some concern about public safety, specifically the safety of women who are by themselves in the presence of [defendant], not based upon the acquitted case, but rather on the prior instances where he did admit that his intention was to commit a sexual assault." It explained

that it sentenced defendant on the basis of the "totality" of defendant's circumstances, and "took him at his word [regarding his mindset] and that it wasn't to commit a sexual assault in that case."

The court's reference to defendant's previous convictions involving sexual assault as part of his criminal history does not establish that the court relied on acquitted conduct. Because we have determined that the trial court did rely on any acquitted conduct during sentencing, we conclude that defendant is not entitled to resentencing. *Brown*, 339 Mich App at 419; *Stokes*, 333 Mich App at 312.

Affirmed.


/s/ James Robert Redford
/s/ Randy J. Wallace
/s/ Andrew J. Lievense