# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
January 26, 2017

Plaintiff-Appellee,

v

No. 329108
Wayne Circuit Court
LC No. 15-003078-01-FC

JAMES EDWARD WHITE,

Defendant-Appellant.

Before:  BECKERING, P.J., and SAWYER and SAAD, JJ.

PER CURIAM.

A jury convicted defendant of being a felon in possession of a firearm (felon-in-possession), MCL 750.224f, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b.  The trial court sentenced defendant, as a fourth habitual offender, MCL 769.12, to 2 to 15 years' imprisonment for the felon-in-possession conviction and two years' imprisonment for the felony-firearm conviction.  Defendant appeals, and for the reasons provided below, we affirm.

This case arises from a shooting that occurred at a car wash in Detroit.  At trial, Terria Desfernandez was the prosecution's main witness.  At around 7:00 p.m. on August 9, 2014, Desfernandez was driving home when she noticed a group of people congregated outside of the local car wash.  She recognized two of her friends, Ronald Curry and "Country," who is the owner of the car wash.  Desfernandez explained that she was talking to Curry when defendant approached.  Desfernandez and defendant had been friends for a number of years, and defendant greeted her with a hug.  However, when defendant stepped back, he said, "I should shoot this b**** in her head."  Desfernandez was confused, but defendant looked right at her and said, "I'll kill this b**** right now."  Desfernandez explained that defendant began to pace back and forth and motion with his hands.  At that time, she noticed that defendant had a black handgun in his waistband.  According to Desfernandez, Curry stepped between them and told defendant, "you not goin' . . . do anything to her."  Desfernandez headed to her car as the two men began to fight.  She watched out of her rear-view mirror as defendant pulled the handgun from his waistband and pointed it toward Desfernandez's vehicle.  She testified that she quickly left the parking lot and watched defendant move the gun back and forth while firing four to five "wild shots."  Nobody was injured.

-1-

The prosecution then called Curry to the stand. Curry testified that while he did get into a fight with defendant that night, defendant did not threaten Desfernandez and never possessed a firearm. After both sides examined Curry, the trial court performed its own examination and asked Curry a number of questions. The prosecution then called the arresting officer and the investigator. According to the investigator, he visited the car wash three days after the incident, but there was no surveillance video, no shell casings, and no witnesses nearby to interview. Defense counsel's only witness was defendant's girlfriend, Stacey Hicks. She claimed that defendant did not possess a gun and she did not know him to own or carry weapons.

Defendant was originally charged with assault with intent to murder (AWIM), MCL 750.83, and at trial, the jury was instructed to consider assault with intent to do great bodily harm less than murder (AWIGBH), MCL 750.84, in the alternative, should it find defendant not guilty of AWIM. Defendant was also charged with assault with a dangerous weapon (felonious assault), MCL 750.82. The jury found defendant not guilty of AWIM, AWIGBH, and felonious assault, but guilty of felon-in-possession and felony-firearm.

## I. JUDICIAL BIAS

Defendant argues that the trial court violated his right to a fair trial because the trial court questioned Curry excessively. Defendant did not raise the issue of judicial bias in the trial court, or object to any of the trial court's comments or questions. Therefore, this issue is unpreserved. *People v Jackson*, 292 Mich App 583, 597; 808 NW2d 541 (2011); see also *People v Stevens*, 498 Mich 162, 180; 869 NW2d 233 (2015). This Court reviews an unpreserved claim of judicial partiality for plain error affecting defendant's substantial rights. *Jackson*, 292 Mich App at 597. Further, "[r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of defendant's innocence." *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999) (quotation marks, citation, and brackets omitted).

Generally, a trial court "may interrogate witnesses, whether called by itself or a party." MRE 614(b). In *Stevens*, 498 Mich at 173, our Supreme Court clarified the proper scope of judicial questioning of witnesses:

> [W]hen evaluating a judge's questioning of witnesses, a reviewing court must first bear in mind that such interrogation is generally appropriate under MRE 614(b). This Court has stated that the central object of judicial questioning should be to clarify. Therefore, it is appropriate for a judge to question witnesses to produce fuller and more exact testimony or elicit additional relevant information.

Our Supreme Court also stated the standard to apply when there is a question of whether judicial conduct pierces the veil of judicial impartiality and deprives a defendant of a fair trial:

> A judge's conduct pierces this veil and violates the constitutional guarantee of a fair trial when, considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party. In evaluating the totality of the circumstances, the reviewing court should inquire into a variety of factors including, but not limited to, the nature of the trial judge's conduct, the tone and

-2-

demeanor of the judge, the scope of the judicial conduct in the context of the length and complexity of the trial and issues therein, the extent to which the judge's conduct was directed at one side more than the other, and the presence of any curative instructions, either at the time of an inappropriate occurrence or at the end of trial. [*Id*. at 164.]

Additionally, the *Stevens* Court explained that "great care should be exercised that the court does not indicate its own opinion and does not lay undue stress upon particular features of a witness's testimony that might, in the eyes of the jury, tend to impeach the witness." *Id*. at 168 (quotation marks, citation, and alterations omitted). "It is inappropriate for a judge to exhibit disbelief of a witness, intentionally or unintentionally." *Id*. at 174 (citation omitted). Moreover, a trial judge cannot "permit his own views on disputed issues of fact to become apparent to the jury." *Id*. (citation omitted).

In this case, the trial court engaged in a long line of questioning of the prosecution's second witness, Curry, who essentially testified that defendant never had a firearm and never fired shots at Desfernandez. Defendant claims that the court assumed the role of prosecutor when it questioned Curry because it was attempting "to influence the jury against the defendant." We disagree. There is nothing in the record to support defendant's bald assertions. Instead, the record shows that the trial court merely attempted to clarify some information or to "elicit additional relevant information." *Id.* at 473.

Defendant first relies on the portion of the trial court's questioning, where the court inquired about Curry's relationship with defendant. Curry previously testified on direct-examination that he had known defendant for "over twenty years." From the trial court's questioning, it appears that the court recognized from the appearances of both Curry and defendant that Curry was much older than defendant.[1] We perceive no error in the court's questioning. The court may have been confronted with a situation on its face that did not appear to make sense because if Curry had been friends with defendant for over 20 years, then that means they may have been friends when defendant was a relatively young child and defendant was a grown adult. But Curry explained that he actually went to school with and was close to defendant's older brother, which explained how he knew defendant when their ages were quite disparate. Thus, the trial court's questioning on this topic helped provide relevant background information related to defendant's prior testimony.

Defendant also cites the portion of the trial court's examination where it thoroughly questioned Curry about his alcohol consumption the day of the charged crimes. Again, we find no error. On direct- and cross-examination, Curry made repeated references to how he drank a lot of alcohol that day. In addition to his pervasive references to drinking that day, he also stated that because of his alcohol consumption, he was unable to recall some specifics of what happened that day. Given Curry's testimony, the trial court inquired into what exactly Curry consumed that day. Curry stated that he drank two 3-ounce cups of cognac, a pint of tequila, and

---

[1] Indeed, Curry told the trial court that he 47 years old at the time of trial and was about 15 or 16 years older than defendant.

-3-

three 12-ounce cans of beer, all within a 40-minute period. In light of Curry's repeated references on direct- and cross-examination, we find the trial court's questions to be acceptable. Contrary to defendant's view, the trial court was not usurping the role of the prosecutor, but was attempting to clarify and provide relevant background on the testimony that Curry already had provided.

In evaluating the totality of the circumstances, we find that the trial court did not pierce the judicial veil of impartiality. For the reasons cited above, we believe that the court was within its right to question Curry as it did. Further, the conduct of the questioning and the trial court's other conduct during the trial did not exhibit any bias. Indeed, we think it is notable that when the prosecution asked the trial court for permission to treat Curry as a hostile witness after its direct-examination had begun, the court denied that request. If the court truly were biased in favor of the prosecution, a different response would have been expected. Additionally, it is important to recognize that Hicks, the only defense witness, also supported defendant's claim that he did not possess a gun that evening, but the trial court did not engage in a similar examination of that witness. If there was a pattern of extensive questioning every witness who supported the defense's positon, then we could see how that may rise to the level of bias, or at least the appearance of bias. But, here, the court only engaged in extensive questioning of one witness, and the examination appears to be valid because that witness's testimony arguably introduced other questions that remained unanswered.

Therefore, we hold that defendant has failed to establish any plain error. Accordingly, he is not entitled to any relief on this issue.[2]

## II. UNREASONABLE SENTENCE

Defendant argues that his sentence for felon-in-possession was unreasonable under *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015), and claims that this Court should use the rule in *People v Milbourn*, 435 Mich 630, 661; 461 NW2d 1 (1990), to find that his sentence was disproportionate. We disagree.

We review de novo questions involving the interpretation and application of the sentencing guidelines. *People v Francisco*, 474 Mich 82, 85; 711 NW2d 44 (2006). We review for an abuse of discretion whether a sentence is proportionate. *People v Crawford*, 232 Mich App 608, 621; 591 NW2d 669 (1998).

Our Supreme Court recently held that Michigan's sentencing guidelines are constitutionally deficient under the Sixth Amendment to the extent that "the guidelines *require* judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offence

---

[2] Moreover, assuming any error was present, any prejudice was cured with the court's instructions to the jury, which provided that any comments, rulings, or questions were not evidence and were not to be considered. See *People v Petri*, 279 Mich App 407, 414; 760 NW2d 882 (2008) (stating that jury instruction are presumed to cure most errors and that jurors are presumed to follow those instructions).

variables . . . that *mandatorily* increase the floor of the guidelines minimum sentence range." *Lockridge*, 498 Mich at 364. To remedy the constitutional violation, the *Lockridge* Court "sever[ed] MCL 796.34(2) to the extent that it makes the sentencing guidelines range as scored on the basis of facts beyond those admitted by the defendant or found by the jury beyond a reasonable doubt mandatory." *Lockridge*, 498 Mich at 364. Furthermore, after *Lockridge*, trial courts no longer have to articulate a substantial and compelling reason for a departure as was previously required under MCL 769.34(3). *Id.* at 364-365. The *Lockridge* Court held "that a guidelines minimum sentence range calculated in violation of *Apprendi* [*v New Jersey*, 530 US 466; 120 S Ct 2348; 147 L Ed 2d 435 (2000),] and *Alleyne* [*v United States*, 570 US ___; 133 S Ct 2151; 186 L Ed 2d 314 (2013),] is advisory only and that sentences that *depart from that threshold* are to be reviewed by appellate courts for reasonableness." *Lockridge*, 498 Mich at 365 (emphasis added).

"The appropriate procedure for considering the reasonableness of a departure sentence is not set forth in *Lockridge*." *People v Steanhouse*, 313 Mich App 1, 42; 880 NW2d 297 (2015), lv gtd 499 Mich 934 (2016). This Court adopted the *Milbourn* standard for determining whether a departure sentence is reasonable:

> Under the new test, "a given sentence could be said to constitute an abuse of discretion if that sentence violated the principle of proportionality, which required sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender." Accordingly, trial courts were required to impose a sentence that took "into account the nature of the offense and the background of the offender." [*Id.* at 45, quoting *Milbourn*, 435 Mich at 636, 651 (brackets omitted).]

"*A departure from the recommended range* in the absence of factors not adequately reflected in the guidelines should alert the appellate court to the possibility that the trial court has violated the principle of proportionality and thus abused its sentencing discretion." *Milbourn*, 435 Mich at 660 (emphasis added).

Defendant argues that, after *Lockridge*, a sentence *within* the minimum sentencing guidelines should be reviewed for reasonableness. For that reason, defendant claims that this Court should determine whether his sentence was reasonable even though it was within the minimum sentencing guidelines range. Defendant's argument misstates the law after *Lockridge*. The review of a sentence for reasonableness mandated by *Lockridge* is limited to a "sentence that *departs* from the applicable guidelines range." *Lockridge*, 498 Mich at 392 (emphasis added). Indeed, sentences that fall within the guidelines range are presumptively proportional. *People v Cotton*, 209 Mich App 82, 85; 530 NW2d 495 (1995). Defendant's sentence here was not a departure sentence. The sentencing guidelines range for defendant's felon-in-possession conviction was 12 to 48 months, and his minimum sentence of two years, or 24 months, fell within that range.

In *People v Armisted*, 295 Mich App 32; 811 NW2d 47 (2011), the defendant challenged his sentence as being disproportionate, despite the fact that the sentence fell within the sentencing guidelines range. The *Armisted* Court noted that MCL 769.34(10) requires this Court to affirm all sentences "that fall[] within the appropriate guidelines range 'absent an error in

scoring the sentencing guidelines or inaccurate information relied upon in determining the defendant's sentence.'" *Id.*at 52, quoting MCL 769.34(10). Hence, because the defendant did not argue that any scoring variable was improperly scored and did not argue that the trial court relied on inaccurate information, this Court was compelled to affirm pursuant to MCL 769.34(10). *Id.*

As in *Armisted*, defendant here does not argue that any scoring variable was improperly scored and does not argue that the court relied on inaccurate information.[3] Accordingly, we must affirm his sentences under MCL 769.34(10).

## III. SUFFICIENCY OF THE EVIDENCE

Defendant also argues that there was insufficient evidence to convict him of felon-in-possession and felony-firearm. We disagree.

A challenge to the sufficiency of evidence is reviewed de novo. *People v Harverson*, 291 Mich App 171, 175-176; 804 NW2d 757 (2010). This Court must review the evidence in a light most favorable to the prosecution and determine whether the jury could have found each element of the charged crimes proved beyond a reasonable doubt. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012). While doing so, we are "required to draw all reasonable inferences and make credibility determinations in support of the jury verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). Indeed, in our review, all conflicts in the evidence are to be resolved in favor of the prosecution. *People v Terry*, 224 Mich App 447, 452; 569 NW2d 641 (1997).

For a conviction of felon-in-possession, the prosecution must present evidence that the defendant possessed a firearm while ineligible to possess a firearm under MCL 750.224f(2) as a result of a prior felony conviction. *People v Perkins*, 473 Mich 626, 630-632; 703 NW2d 448 (2005). Although proof of a felony conviction is an element, the parties may stipulate that the defendant has been convicted of a prior felony. *People v Green*, 228 Mich App 684, 691-692; 580 NW2d 444 (1998). For a conviction of felony-firearm, the prosecution must show that defendant carried or possessed a firearm during the commission of a felony or the attempt to commit a felony. *People v Akins*, 259 Mich App 545, 554; 675 NW2d 863 (2003). In this case, the parties stipulated that defendant had a prior felony conviction and was ineligible to possess a firearm under MCL 750.224f. Additionally, defendant does not dispute that the felon-in-possession conviction may provide the underlying felony for purposes of a felony-firearm

---

[3] While defendant takes issue with some of the factual findings the trial court made at the sentencing hearing, he does not specifically challenge the scoring of the offense variable, OV 19, that was related to those factual findings. Indeed, defendant never even cites to any particular offense variable, let alone OV 19, anywhere in his brief on appeal. Thus, we do not view defendant's argument as a challenge to the scoring of any offense variable, and to the extent it could be construed as such an attempt, the claim is waived for failure to list the issue in his statement of the questions presented, MCR 7.212(C)(5); *People v Miller*, 238 Mich App 168, 172; 604 NW2d 781 (1999), and for failure to adequately brief the issue, *People v McPherson*, 263 Mich App 124, 136; 687 NW2d 370 (2004).

conviction. Therefore, the only question for our purposes is whether there was sufficient evidence to show that defendant possessed a handgun at the time of the incident at the car wash.

Defendant claims that Desfernandez's testimony did not provide sufficient evidence to prove that defendant possessed a firearm. Defendant seems to imply in his brief on appeal that Desfernandez's testimony was insubstantial because he claims that she only "thought" she saw a gun and "thought" she heard gunshots. On the contrary, Desfernandez's testimony exhibited no equivocation. She clearly testified that she saw defendant with a black handgun and saw him fire it wildly. This was sufficient to allow a jury to conclude beyond a reasonable doubt that defendant indeed possessed a gun. Defendant's reliance on Curry's testimony, which provided that defendant did not have a gun that evening, is misplaced, as we are to resolve any conflicts in the evidence in favor of the prosecution. *Terry*, 224 Mich App at 452. Such discrepancies were up for the jury to decide, and we will not disturb their determinations. See *People v Unger*, 278 Mich App 210, 222; 749 NW2d 272 (2008).

Affirmed.


/s/ Jane M. Beckering
/s/ David H. Sawyer
/s/ Henry William Saad