# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JAMES WILLIAM FREESE, II,

        Defendant-Appellant.

UNPUBLISHED
April 25, 2017

Nos. 329673 & 332141
Alpena Circuit Court
LC No.  14-006306-FC

Before:  O'BRIEN, P.J., and SERVITTO and STEPHENS, JJ.

PER CURIAM.

Defendant was convicted of five counts of first-degree criminal sexual conduct (CSC-I) MCL 750.520b(1)(b)(*ii*) (related victim 13-15 years old), two counts of second-degree CSC, MCL 750.520c(1)(a) (victim under 13), one count of third-degree CSC, MCL 750.520d(1)(a) (victim 13-15 years old), two counts of third-degree CSC, MCL 750.520d(1)(b) (force or coercion), and one count of fourth-degree CSC, MCL 750.520e(1), after entering a series of no-contest pleas.  The trial court imposed concurrent sentences of imprisonment of 15 to 40 years for each CSC-I conviction, three to 15 years for each CSC-II conviction, four to 15 years for each CSC-III conviction, and 13 months to two years for the CSC-IV conviction, along with lifetime electronic monitoring, MCL 750.520n(1).  Defendant appeals in part by right,[1] and in part by delayed leave granted.[2]  We affirm.

These cases arose from allegations that defendant sexually assaulted various women and girls between 1991 and 2012.  Defendant initially elected to exercise his right to a jury trial.  On the third day of trial, however, after the prosecuting attorney offered into evidence some documentation that undercut defendant's alibi defense, defendant pled no contest to 11 counts of

---

[1] Because several of the sexual assaults occurred before December 24, 1994, the effective date of the voters' approval of a constitutional amendment limiting appeals of convictions resulting from pleas of guilty or nolo contendere to leave granted by this Court, see Const 1963, art 1, § 20, defendant properly claimed an appeal from his convictions relating to the assaults occurring before that date.

[2] *People v Freese II*, unpublished order of the Court of Appeals, entered May 5, 2016 (Docket No. 332141).

CSC in exchange for the dropping of the one such charge that would have exposed him to a mandatory minimum sentence of not less than 25 years. See MCL 750.520b(2)(b).

On appeal, defendant argues that the trial court erred in denying his motion to withdraw his pleas, in including within his sentence mandatory lifetime electronic monitoring, and in departing upward from the sentencing guidelines when imposing minimum sentences for the convictions of first- and second-degree CSC. Defendant additionally argues that he was convicted and sentenced without benefit of effective assistance of counsel.

## I. MOTION TO WITHDRAW PLEA

This Court reviews a trial court's decision on a motion to withdraw a plea of no contest for an abuse of discretion. *People v Wilhite*, 240 Mich App 587, 594; 618 NW2d 386 (2000). An abuse of discretion occurs where the trial court chooses an outcome falling outside a "principled range of outcomes." *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003). A trial court's findings of fact may not be set aside unless they are clearly erroneous. MCR 2.613(C).

A trial court "may not accept a plea of guilty or nolo contendere unless it is convinced that the plea is understanding, voluntary, and accurate." MCR 6.302(A). "[A]fter a plea has been accepted by the trial court, there is no absolute right to withdraw the plea." *People v Eloby (After Remand)*, 215 Mich App 472, 474-475; 547 NW2d 48 (1996). A plea may be withdrawn if doing so serves the interest of justice and does not substantially prejudice the prosecution, or if there is an error in the plea proceeding itself. MCR 6.302(B)-(C). See also *People v Thew*, 201 Mich App 78, 95; 506 NW2d 547 (1993).

Defendant does not argue that there was any error in the mechanics of the plea proceeding. He, instead, insists that justice requires that he be permitted to withdraw his plea on the ground that the plea was not voluntary in that he offered it in response to improper coercive pressure on the part of defense counsel. The trial court held an evidentiary hearing on the motion to withdraw the plea, and concluded, "I don't believe [defendant] was coerced." At issue is whether this conclusion was clearly erroneous. "Clear error exists when some evidence supports a finding, but a review of the entire record leaves the reviewing court with the definite and firm conviction that the lower court made a mistake." *In re Dearmon*, 303 Mich App 684, 700; 847 NW2d 514 (2014). This Court must defer to the trial court's special opportunity to observe the witnesses. *Id.*

Defendant fails to demonstrate that the court's conclusion was clearly erroneous. The court examined the circumstances surrounding the defendant's decision, mid-trial to offer the no contest pleas. The defendant's defense was, in substantial part, based on an alibi. However, during cross-examination of defendant's brother who had testified that defendant was continuously absent from the state between June 11, 2002, and the end of 2002, the prosecutor offered evidence that defendant had been arrested in Michigan in July of that year and had posted bond. Defense counsel, whose alibi defense was mortally wounded, made statements regarding being sandbagged and requested and was given a recess. The pleas were entered after a recess of more than an hour. While defendant argues that his counsel was forceful in his advice to enter the no-contest plea, and asserts that he was improperly rushed into making a decision, the court

-2-

found that the pressure to plea came from the circumstances of a compromised defense and the potential for a lengthy prison term. Both the trial judge and a witness noted that defense counsel met with his client during the hour-long recess preceding the plea.

Further, after defendant pleaded no contest to the eleven charges, and the trial court recited its factual bases for accepting the pleas, the following exchange took place between the court and defendant:

> *Q.* [H]as anybody made any promises to you, other than what's been stated on the record, to get you to plead no contest to these charges?
>
> *A.* No.
>
> *Q.* Has anybody threatened you in any fashion to get you to plead no contest?
>
> *A.* No.
>
> *Q.* The pleas of no contest that you just entered to these 11 charges, is that your idea or somebody else's?
>
> *A.* Mine.

In light of defendant's answers to those questions during the plea proceedings, and affording due deference to the trial court's special opportunity to observe the witnesses and what otherwise went on in court, see *In re Dearmon*, 303 Mich App at 700, we are not left with a definite and firm conviction that the trial court was mistaken when it concluded that defendant was not coerced into pleading no contest.

## II. ALLEGATIONS OF TRIAL COURT BIAS

Defendant asserts that the trial court was biased against him, but the only basis he advances is that the court expressed its disbelief of defendant's alibi defense. However, defendant asked the court to evaluate the needs of justice in connection with his request to withdraw his pleas, and so the court had the right and duty to form an opinion on defendant's theory of innocence. That the court noted that the documentary evidence presented at trial severely undercut defendant's position in that regard hardly itself signals judicial bias. Nothing else in the record suggests that the trial court acted as other than the detached and neutral magistrate that due process requires. See *People v Cheeks*, 216 Mich App 470, 480; 549 NW2d 584 (1996).

For these reasons, we reject defendant's argument that the trial court clearly erred in rejecting his allegations that defense counsel improperly frightened him into offering his no-contest pleas.

## III. ELECTRONIC MONITORING

MCL 750.520n(1) requires lifetime electronic monitoring as part of the sentence for first- or second-degree CSC "committed by an individual 17 years old or older against an individual less than 13 years of age."

Defendant puts forward as a second basis for why he should have been allowed to withdraw his no-contest pleas that the trial court failed to advise him that conviction on the two charges of second-degree CSC would result in mandatory lifetime electronic monitoring. However, defendant admits that he did not raise this claim when asking to withdraw his plea. That failure is fatal to this claim of error. "A defendant convicted on the basis of a plea may not raise on appeal any claim of noncompliance with the requirements of the rules in this subchapter, or any other claim that the plea was not an understanding, voluntary, or accurate one, unless the defendant has moved to withdraw the plea in the trial court, raising as a basis for withdrawing the claim sought to be raised on appeal." MCR 6.310(D). See also *People v Armisted*, 295 Mich App 32, 48; 811 NW2d 47 (2011).

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that his counsel was constitutionally ineffective. This claim was raised in identical motions to remand in the cases consolidated below. This Court denied the motion without prejudice. *People v Seals*, 285 Mich App 1, 19–20; 776 NW2d 314 (2009). Thus, his claim is unpreserved.

> A claim of ineffective assistance of counsel presents a mixed question of law and fact. This Court reviews a trial court's findings of fact, if any, for clear error, and reviews de novo the ultimate constitutional issue arising from an ineffective assistance of counsel claim. However, this Court's review of unpreserved claims of ineffective assistance of counsel is limited to mistakes apparent on the record. [*People v Brown*, 294 Mich App 377, 387; 811 NW2d 531 (2011) (citations omitted).]

"In reviewing a defendant's claim of ineffective assistance of counsel, the reviewing court is to determine (1) whether counsel's performance was objectively unreasonable and (2) whether the defendant was prejudiced by counsel's defective performance." *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999). Regarding the latter, the defendant must show that the result of the proceeding was fundamentally unfair or unreliable, and that but for counsel's poor performance the result would have been different. *People v Messenger*, 221 Mich App 171, 181; 561 NW2d 463 (1997). Similarly, a defendant claiming ineffective assistance of appellate counsel must show that appellate counsel's performance was deficient under an objective standard of reasonableness and that the deficiency prejudiced the defendant. *Roe v Flores-Ortega*, 528 US 470, 476-477; 120 S Ct 1029; 145 L Ed 2d 985 (2000); *People v Uphaus* (*On Remand*), 278 Mich App 174, 186; 748 NW2d 899 (2008). "When ineffective assistance of counsel is claimed in the context of a plea, the pertinent inquiry is whether the defendant tendered the plea voluntarily and understandingly." *Armisted*, 295 Mich App at 48 (citation omitted).

Defendant predicates this claim of error on his trial attorney having coerced him into pleading no contest instead of continuing with trial, and on post-trial successor counsel's not

having pursued plea withdrawal on the basis of the trial court's failure to provide the required advice concerning mandatory lifetime monitoring. We rejected above defendant's arguments that he was coerced into pleading no contest. Consequently his claim of ineffective assistance of counsel predicated on this argument, also fails. See *People v Fike*, 228 Mich App 178, 182-183; 577 NW2d 903 (1998) ("[C]ounsel cannot be faulted for failing to raise an objection or motion that would have been futile.").

Defendant argues that both counsels were ineffective for failing to raise the issue of the court's omission of the lifetime electronic monitoring consequences of his no-contest plea for the two counts of CSC 2 committed against persons between ages 13 and 17. We, also reject this argument.

As trial gave way to plea proceedings, the trial court advised defendant in connection with the first-degree CSC alleged in Count VI, "That's a tier 3 offense and a life maximum with mandatory life monitoring—electronic monitoring and mandatory aids and STD testing." Likewise, that Count VII involved "life in prison as a maximum punishment, mandatory lifetime monitoring—well I should advise you the Court may impose a consecutive sentence to other charges." And, that counts VIII, IX, and X were "SORA offense[s]," exposing defendant to, respectively, "life in prison, mandatory lifetime monitoring, and the Court may impose consecutive sentences to other offenses," "life in prison, mandatory lifetime monitoring," and "SORA, life as a maximum punishment, mandatory lifetime monitoring." For all five charges that resulted in convictions of first-degree CSC, then, the court advised defendant that he faced mandatory lifetime electronic monitoring.

Defendant does not suggest that there was any deficiency in this regard in connection with those five charges. MCL 750.520n(1) calls for "lifetime electronic monitoring" as part of the sentence for first- *or* second-degree CSC "committed by an individual 17 years old or older against an individual less than 13 years of age . . . ." We agree that the court did not reiterate the lifetime electronic monitoring at the time it received and reviewed the two CSC 2 charges.

MCR 6.302(B)(2) provides that with respect to the requirement that a plea be understanding, a defendant must be told of "the maximum possible prison sentence for the offense and any mandatory minimum sentence required by law, including a requirement for mandatory lifetime electronic monitoring under MCL 750.520b [CSC I] or MCL 750.520c [CSC II.]" Substantial compliance with this rule may satisfy its requirements; minor deviations from perfect compliance do not necessarily require reversal. *People v Saffold*, 465 Mich 268, 273; 631 NW2d 320 (2001)..

In this case, defendant relies on *People v Cole*, 491 Mich 325; 817 NW2d 497 (2012), where our Supreme Court held that the defendant was entitled to withdraw his no-contest pleas to two counts of second-degree CSC in response to the trial court's complete failure to advise the defendant that lifetime electronic monitoring would come to bear. *Id.* at 328-329, 337-338. *Cole* is distinguishable from the instant case, however, in that *Cole* involved the total failure to bring the matter of lifetime electronic monitoring to the defendant's attention. In the instant case, as noted, the trial court advised defendant in connection with each of his five charges that resulted in convictions of first-degree CSC that he faced lifetime electronic monitoring. Although the court overlooked that aspect in connection with defendant's two no-contest pleas to charges of second-degree CSC, the court's having addressed the matter in connection with the five charges

that resulted in conviction of first-degree CSC rendered its oversight harmless error, and kept the plea proceeding as a whole in substantial compliance with the requirements of MCR 6.302(B)(2). Thus, failure of either trial or post-trial counsel to preserve a claim of error did not result in prejudice to defendant.

## V. SENTENCING

Defendant argues that electronic monitoring should not be applied to his convictions of second-degree CSC on the ground that doing so would violate his right against application of ex post facto law. See US Const, art I, § 10, cl 1; Const 1963, art 1, § 10. But defendant himself points out that the offenses underlying the CSC-II convictions took place in 2010 and 2012, respectively, and that the effective date of the legislation calling for lifetime electronic monitoring was in 2006. 2006 PA 171 (effective August 28, 2006).

Defendant also argues that the sentenced imposed by the court for first- and second-degree CSC violated the principle of proportionality. In imposing minimum sentences for first- and second-degree CSC of 15 and three years, respectively, the trial court departed from the guidelines recommendations of three to eight years, and one to two years, respectively.

Departure sentences are reviewed on appeal for reasonableness. *People v Lockridge*, 498 Mich 358, 365; 870 NW2d 502 (2015). The following criteria bear on the question:

> (1) the seriousness of the offense; (2) factors that were inadequately considered by the guidelines; and (3) factors not considered by the guidelines, such as the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation. [*People v Steanhouse*, 313 Mich App 1, 46; 880 NW2d 297 (2015),[3] citing *People v Houston*, 448 Mich 312, 321, 323, 324; 532 NW2d 508 (1995); *People v Milbourn*, 435 Mich 630, 660; 461 NW2d 1 (1990).]

In this case, defendant decided to accept the plea bargain only after the trial court had the testimony of the CSC-I and CSC-II victims in the record for its consideration. This testimony provided the court with evidence of factors that are not taken into account by the guidelines.

One CSC-II victim, eight-years-old at the time of trial, testified that she was in defendant's care at the time of the offense. The other CSC-II victim testified that she was thirteen-years-old, and that defendant was formerly married to her mother. This victim provided a form victim impact statement on which she circled, as applicable, indications that what happened to her left her feeling scared, sad, angry, and confused, and penciled in "disgusted."

---

[3] In *People v Steanhouse*, 499 Mich 934, 934; 879 NW2d 252 (2016), our Supreme Court announced its intention to address the criteria for sentencing review put forward under *Steanhouse* along with the different criteria proposed in *People v Masroor*, 313 Mich App 358; 880 NW2d 812 (2015). In deciding the sentencing issues in this case, however, we feel no need to await the Supreme Court's resolution of the tension between *Steanhouse* and *Masroor*, because we are confident that either approach calls for affirmance in this instance.

When asked what she would do if she "were the judge," she identified the prepared response, "Send him to jail," and offered as her own idea, "Make him get what he deserves," adding, "at night its [sic] hard for me to sleep knowing he's not in jail. I feel like he's going to come after me again." The victims underlying the CSC-I convictions were first cousins to defendant. The younger CSC-1victim attributed her 25-year alcohol dependency, along with trust issues, nightmares, and problems sleeping, to the trauma she suffered.

In explaining its decision to exceed the guidelines recommendations, the trial court stated as follows:

> [T]he Court listened to three days of testimony from all of the victims. And The Court finds their stories both credible and compelling and, in fact, mournfully compelling.
>
> Others have stepped forward for you, [defendant], while you—including what I viewed to be at the time and still do, a fabricated defense, but the number of victims, the number of deviant acts over such a long duration of time involving young girls leads this Court to conclude that this activity over such a period of time is nothing less than monstrous.

The court well justified its decision. The law recognizes sexual misconduct whereby an offender occupying something of a parental role in the life of the victim as among the most heinous form that CSC can take. See *People v Sabin (On Second Remand)*, 242 Mich App 656, 662-663; 620 NW2d 19 (2000) (sexual abuse of one's own minor child "represents one of the most egregious forms of the crime of first-degree criminal sexual conduct because of the helplessness and harm to the victim when so abused by a parent" and "represents an act that has been historically viewed by society and this Court as one of the worst types of sexual assault," which may thus justify "imposing a sentence approaching the maximum allowed under the law"). Defendant's repeated victimization, over several years, of young girls who should have been able to look to defendant, as an older person in a family setting, for comfort and security itself justifies the minimum sentences of 15 and three years, respectively, for the convictions of CSC-I and CSC-II.

Defendant again raises the specter of judicial bias, citing the trial court's expressions of contempt for the theory of defense defendant had been poised to put forward. However, defendant cites no authority for the proposition that a sentencing court must form no opinion concerning the veracity of a proposed defense, or otherwise decline to take such an opinion into account for purposes of sentencing. See *Mitcham v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959) ("It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to . . . search for authority either to sustain or reject his position.").

For these reasons, defendant has failed to show that the minimum sentences the trial court imposed for the convictions of first- and second-degree CSC were excessive.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Deborah A. Servitto
/s/ Cynthia Diane Stephens