# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JUSTIN THOMAS,

        Defendant-Appellant.

UNPUBLISHED
November 27, 2018

No. 338648
Wayne Circuit Court
LC No. 16-008415-01-FC

---

Before: JANSEN, P.J., and K. F. KELLY and BORRELLO, JJ.

PER CURIAM.

Defendant appeals as of right his convictions, following a jury trial, of armed robbery, MCL 750.529, felon in possession of a firearm (felon-in-possession), MCL 750.224f, carrying a concealed weapon (CCW), MCL 750.227, felon in possession of ammunition, MCL 750.224f, resisting or obstructing a police officer, MCL 750.81d, and possession of a firearm during the commission of a felony, second offense, MCL 750.227b (felony-firearm). The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to concurrent prison terms of 25 to 50 years for the armed robbery conviction, 5 to 15 years each for the felon-in-possession and CCW convictions, and 2 to 15 years for the resisting or obstructing conviction, to be served consecutive to a five-year prison term for the felony-firearm conviction. Defendant appeals as of right, and we affirm.

Defendant was convicted of robbing Angelo Hudson at gunpoint in September 2016. Angelo testified that he was staying at the house of his sister, Angela Hudson, who had given him $150 to pay for cable service. According to Angelo, after Angela had left the house with her son to run an errand, defendant, whom Angelo knew from the neighborhood, stopped by the house and Angelo let him into the enclosed front porch area of the home. They sat down on the porch and talked. Eventually, defendant pulled out a nine millimeter handgun from underneath a red vest and told Angelo to give him all of his money and to empty his pockets. Initially, Angelo thought defendant was joking, but defendant assured him that he was serious. Angelo said he gave defendant the $150 his sister had given him, plus another $10 he had, in addition to a bottle of liquor, his cell phone, his keys, and a silver cross on a chain. At Angelo's request, defendant agreed to return the cell phone to Angelo, but told him not to call anyone or defendant would kill him.

-1-

Within a few minutes after defendant left, Angelo contacted his sister who returned home. When she arrived home, Angela called the police to report the robbery. She initially told the dispatcher that she had been the robbery victim. She explained at trial that she made the call and said that she was the victim because Angelo was scared and did not want to call the police. But because the crime occurred at her house and it was her money that was taken, she made the call to protect her family. She knew what defendant was wearing that day because she had seen him earlier in the day. She told the dispatcher that defendant was wearing a red vest.

Two patrol officers who heard the report of the robbery saw defendant within a few blocks of Angelo's house. He was wearing a red vest and he matched the description of the robbery suspect. When the police tried to talk to him, he ran into a house. The police chased defendant into the house and apprehended him. One officer saw defendant throw a nine millimeter handgun underneath a car seat in the house. After defendant was arrested, the police found $138 in cash in his possession, in denominations similar to the money Angelo described as having been taken from him during the robbery. Defendant also possessed Angelo's silver chain, and a magazine clip for the handgun.

## I. SUFFICIENCY OF THE EVIDENCE

Defendant argues that the evidence at trial was insufficient to support his convictions for any of the charged offenses. We review a challenge to the sufficiency of the evidence de novo. *People v Hammons,* 210 Mich App 554, 556; 534 NW2d 183 (1995). An appellate court's review of the sufficiency of the evidence to sustain a conviction should not turn on whether there "was any evidence to support the conviction but whether there was sufficient evidence to justify a rational trier of fact in finding guilt beyond a reasonable doubt." *People v Wolfe*, 440 Mich 508, 513-514; 489 NW2d 748, amended 441 Mich 1201 (1992). This Court must view the evidence in a light most favorable to the prosecution. *Wolfe*, 440 Mich at 515.

Although defendant challenges the sufficiency of the evidence in support of his convictions, he does not argue that the prosecution failed to present evidence in support of the individual elements for each of the charged offenses. Instead, he argues that the evidence was insufficient to prove that any offense was committed by him, and he argues that conflicts or inconsistencies in the evidence should have prevented the jury from finding him guilty. Specifically, defendant emphasizes that Angela told the police dispatcher that she was the victim of the robbery. Defendant also notes that Angelo testified that the offense occurred inside an enclosed porch, but the officer who took the initial report wrote that the offense occurred in the front yard of the house. Defendant argued at trial that Angelo lied about the robbery to cover up that he lost his sister's money to defendant gambling or playing dice games. Angelo denied that he gambled or played dice games with defendant.

Defendant's attacks on the credibility of Angelo's and Angela's testimony are not a valid basis for challenging the sufficiency of the evidence in support of his convictions. Angelo expressly identified defendant as the person who robbed him at gunpoint. To the extent that defendant attacks Angelo's credibility, "[t]his Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses." *People v Williams,* 268 Mich App 416, 419; 707 NW2d 624 (2005). In reviewing a challenge to the sufficiency of the evidence, "[a]ny conflict[s] in the evidence must be resolved in the prosecutor's favor."

*People v Jackson,* 292 Mich App 583, 587-588; 808 NW2d 541 (2011). The jury apparently found that Angelo's account was credible. Indeed, when the police arrested defendant shortly after the offense, he was wearing a red vest that matched Angelo's description, and a silver chain that Angelo identified as having been taken during the offense was found in defendant's possession. Defendant also possessed a large amount of cash in denominations similar to the money that Angelo claimed defendant took during the robbery.

As the prosecution points out, defendant is substantively arguing that the jury's verdict was against the great weight of the evidence. However, because defendant did not raise that argument in a motion for a new trial in the trial court, any review by this Court is limited to plain error affecting defendant's substantial rights. *People v Cameron,* 291 Mich App 599, 617-618; 806 NW2d 371 (2011); *People v Musser,* 259 Mich App 215, 218; 673 NW2d 800 (2003).

In *People v Lacalamita*, 286 Mich App 467, 469-470; 780 NW2d 311 (2009), this Court summarized the standards for determining whether a jury's verdict is against the great weight of the evidence:

> The test to determine whether a verdict is against the great weight of the evidence is whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand. Generally, a verdict may be vacated only when the evidence does not reasonably support it and it was more likely the result of causes outside the record, such as passion, prejudice, sympathy, or some other extraneous influence. Conflicting testimony, even when impeached to some extent, is an insufficient ground for granting a new trial. Further, the resolution of credibility questions is within the exclusive province of the jury. [Citations and quotation marks omitted.]

In *People v Lemmon*, 456 Mich 625, 642; 576 NW2d 129 (1998), the Michigan Supreme Court adopted the rule that, absent extraordinary circumstances, issues of witness credibility are for the jury to resolve, and a reviewing court may not substitute its view of the credibility of witnesses for the jury's determination thereof. The Court explained that there are some narrow exceptions to this rule, observing:

> We reiterate the observation in *Anderson v Conterio*, 303 Mich 75, 79; 5 NW2d 572 (1942), that, when testimony is in direct conflict and testimony supporting the verdict has been impeached, if "it cannot be said as a matter of law that the testimony thus impeached was deprived of all probative value or that the jury could not believe it," the credibility of witnesses is for the jury.

> Adding flesh to what is a more refined articulation of the formula that " '[i]n general, conflicting testimony or a question as to the credibility of a witness are not sufficient grounds for granting a new trial,' " *United States v Garcia*, 978 F2d 746, 748 (CA 1, 1992), quoting with approval *United States v Kuzniar*, 881 F2d 466, 470 (CA 7, 1989), federal circuit courts have carved out a very narrow exception to the rule that the trial court may not take the testimony away from the jury. *Id*. at 470-471. Defining the exception, the federal courts have developed several tests that would allow application of the exception; for example, if the

"testimony contradicts indisputable physical facts or laws," *id*., "[w]here testimony is patently incredible or defies physical realities," *United States v Sanchez*, 969 F2d 1409, 1414 (CA 2, 1992), "[w]here a witness's testimony is material and is so inherently implausible that it could not be believed by a reasonable juror," *Garcia, supra* at 748, or where the witness' testimony has been seriously "impeached" and the case marked by "uncertainties and discrepancies." *United States v Martinez*, 763 F2d 1297, 1313 (CA 11, 1985).

This does not mean that "[a] judge's disagreement with the jury's verdict," *United States v Arrington*, 757 F2d 1484, 1486 (CA 4, 1985), or a "trial judge's rejection of all or part of the testimony of a witness or witnesses," entitles a defendant to a new trial. *Sanchez, supra* at 1414. Rather, a trial judge must determine if one of the tests applies so that it would seriously undermine the credibility of a witness' testimony and, if so, is there "a real concern that an innocent person may have been convicted" or that "it would be a manifest injustice" to allow the guilty verdict to stand. *Id*. If the "evidence is nearly balanced, or is such that different minds would naturally and fairly come to different conclusions," the judge may not disturb the jury findings although his judgment might incline him the other way. *Kringstad, supra* at 307.[1] Any "real concern" that an innocent person has been convicted would arise "only if the credible trial evidence weighs more heavily in [the defendant's] favor than against it." *Polin, supra* at 551.[2] [*Lemmon*, 456 Mich at 642-645 (footnotes omitted).]

In this case, Angelo testified that defendant robbed him of money, liquor, and a silver chain at gunpoint. Defendant argues that Angelo's account was not credible because a responding police officer who took an initial report wrote that the offense occurred in the front yard of the house, whereas Angelo testified that it occurred in the enclosed area of a front porch. Defendant also made a point of challenging both Angelo's and Angela's credibility because Angela told the dispatcher that she was the actual victim of the armed robbery. These discrepancies were elicited and addressed at trial. Angelo denied that the offense occurred in the front yard as indicated in the initial police report, and an officer testified that initial police reports are not always accurate. In addition, Angela explained to the jury why she initially told the dispatcher that she was the robbery victim, even though it was Angelo who was robbed. Although the defense invited the jury to consider these inconsistencies and conflicts when weighing all of the evidence, the jury could have reasonably determined that they did not render Angelo's account so inherently implausible or deprive it of all probative value that it could not be believed.

Notwithstanding some inconsistencies and conflicts in the testimony, evidence was presented that defendant was arrested shortly after the offense in the same vicinity of the crime, and he attempted to flee when the police encountered him. At the time of defendant's arrest, he

---

[1] *State v Kringstad*, 353 NW2d 302 (ND, 1984).

[2] *United States v Polin*, 824 F Supp 542 (ED Pa, 1993).

was wearing a red vest as described by Angelo, he possessed the silver chain that Angelo claimed was taken during the robbery, he possessed a large amount of cash in denominations similar to the money that Angelo claimed was taken during the robbery, and he also possessed a nine millimeter firearm, which was the same type of weapon Angelo claimed defendant used during the robbery. Although the defense suggested that Angelo lost the money from gambling or playing dice games with defendant, there was no evidence offered to support this theory. Defendant simply offers speculation and conjecture to impugn Angelo's credibility. The great weight of the evidence did not preponderate so heavily against the jury's verdict that it would be a miscarriage of justice to allow the verdict to stand.

## II. SENTENCING

Defendant challenges the reasonableness of his sentence for armed robbery. The sentencing guidelines range for defendant's armed robbery conviction recommended a minimum sentence range of 126 to 420 months. The trial court sentenced defendant within this range, to a term of 25 to 50 years' imprisonment, providing the following reasons in support of its sentencing decision:

> Okay. Mr. Thomas, it is clear from your record and from the facts in this case that you have very little regard for law enforcement and for your fellow [ ] man, including someone that considered you a relative, almost a brother.
>
> You have a past history of theft and assaultive crimes. And it's very disturbing to me where your life has led so far, and you're only at the age of 29 years old.
>
> It is the sentence of the Court, sir — your guidelines range is between 10 ½ years to 35 years — and on the charge of armed robbery, it is the sentence of this Court that you be sentenced to a period of incarceration of 25 to 50 years.

Although defendant argues that his sentence of 25 to 50 years for armed robbery is unreasonable and disproportionate, because his sentence is within the guidelines range, this Court's review is limited by MCL 769.34(10), which provides that "[i]f a minimum sentence is within the appropriate guidelines sentence range, the court of appeals shall affirm that sentence and shall not remand for resentencing absent an error in scoring the sentencing guidelines or inaccurate information relied upon in determining the defendant's sentence."

In *People v Lockridge*, 498 Mich 358, 364; 870 NW2d 502 (2015), our Supreme Court held that Michigan's sentencing guidelines are constitutionally deficient, in violation of the Sixth Amendment, to the extent that they "*require* judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables (OVs) that *mandatorily* increase the floor of the guidelines minimum sentence range . . ." To remedy this deficiency, the Court held that the guidelines are advisory only. *Id.* at 399. However, in *People v Schrauben*, 314 Mich App 181, 196 n 1; 886 NW2d 173 (2016), this Court held that "*Lockridge* did not alter or diminish MCL 769.34(10)." Thus, "[w]hen a trial court does not depart from the recommended minimum sentence range, the minimum sentence must be affirmed unless there was an error in scoring or the trial court relied on inaccurate information." *Schrauben*, 314 Mich App at 196;

see also *People v Anderson*, 322 Mich App 622, 636-637; 912 NW2d 607 (2018) (recognizing that absent a scoring error or an allegation of inaccurate information, a sentence within the guidelines range will not be reviewed for reasonableness). Because defendant's sentence for armed robbery is within the guidelines range, and he does not allege a scoring error or reliance on inaccurate information, MCL 769.34(10) requires this Court to affirm his sentence.

Defendant further argues that his sentence for armed robbery amounts to cruel and/or unusual punishment under the federal and state constitutions. US Const, Am VIII; Const 1963, art 1, §16. Although MCL 769.34(10) does not preclude defendant's constitutional challenge to his sentence, a sentence within the guidelines range is presumptively proportionate, *People v Armisted*, 295 Mich App 32, 51; 811 NW2d 47 (2011); *People v Powell*, 278 Mich App 318, 323; 750 NW2d 607 (2008), and a proportionate sentence is neither cruel nor unusual punishment. *Id*.; see also *People v Bowling*, 299 Mich App 552, 558; 830 NW2d 800 (2013). To overcome the presumption of proportionality, defendant must present unusual circumstances that would render his presumptively proportionate sentence disproportionate. *Id*.

Defendant argues that his sentence is disproportionate because he is facing a minimum of 30 years when his 25-year sentence for armed robbery is combined with the five-year consecutive sentence he must first serve for felony-firearm. Defendant argues that the combined amount of time is disproportionate, given that he is presently about 30 years old, meaning he will be about 60 years old when he is eligible for parole. These circumstances do not qualify as unusual considering that defendant is already a fourth-time habitual offender and that this offense was his second felony offense committed with a firearm. According to defendant's presentence report, he has a criminal history as both a juvenile and an adult, dating back to 2002. As an adult, defendant was convicted of possession with intent to deliver marijuana in 2007, and receiving or concealing a stolen motor vehicle in 2008. Thereafter, in 2009, he was convicted of two counts of assault with intent to do great bodily harm less than murder, felon in possession of a firearm, and felony-firearm, and he was sentenced to 4 to 20 years in prison for the assault convictions. Defendant was paroled from prison in October 2015, and was on parole when he committed the instant offenses in 2016. In light of defendant's lengthy, continuous, and escalating criminal history, there are no unusual circumstances to overcome the presumptive proportionality of his sentences. Thus, defendant's sentences do not qualify as unconstitutionally cruel or unusual.

Affirmed.

/s/ Kathleen Jansen
/s/ Kirsten Frank Kelly
/s/ Stephen L. Borrello