*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

JOESPH RAY RUSHFORD,

      Defendant-Appellant.

UNPUBLISHED
July 22, 2025
11:19 AM

No. 364017
Ionia Circuit Court
LC No. 2021-018414-FC

Before: FEENEY, P.J., and BORRELLO and LETICA, JJ.

PER CURIAM.

Defendant pleaded no-contest to one count of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(a) and (2)(b) (sexual penetration of a child under 13 by person 17 years of age or older). Consistent with the parties' agreement, the trial court sentenced defendant to serve the 25-year mandatory-minimum sentence, MCL 750.520b(2)(b), to a maximum of 35 years' imprisonment. In exchange for defendant's plea, the prosecution dismissed a separate CSC-I charge. Defendant later moved to withdraw his plea and for an evidentiary hearing, arguing that he did not understand the plea proceedings because of his mental incapacity and that his counsel was ineffective for not insisting on a conditional plea and should have appealed the trial court's

finding that he was competent. The trial court denied defendant's motion. Defendant now appeals on remand from the Michigan Supreme Court as on leave granted.[1] We affirm.

---

[1] *People v Rushford*, 513 Mich 1103 (2024). This Court had denied defendant's application for leave to appeal. *People v Rushford*, unpublished order of the Court of Appeals, entered May 31, 2023 (Docket No. 364017). It appears that defendant raised two new issues in his application for leave to appeal to our Supreme Court. Those issues have not been raised in the briefing on remand before this Court.

-1-

# I. FACTS

On November 1, 2020, the 25-year-old defendant spent the night at a friend's house. That evening and early the next morning, defendant entered the bedroom of his friend's 12-year-old sister and sexually assaulted her each time.

Later that day, the victim informed her teacher about defendant's sexual assaults. The school quickly contacted the victim's parents and law enforcement.

The police questioned defendant, who admitted to having sexual intercourse with the child, but blamed her. Defendant said that she tricked him, seduced him, and forced him to have sex with her. Even so, defendant wrote an apology letter to the victim's family, expressing remorse and seeking forgiveness. Defendant was charged with two counts of CSC-I.

In the district court, defendant underwent three evaluations for competency and legal sanity as well as a risk assessment. One of the three evaluators opined that defendant was not competent to stand trial; however, the other two evaluators separately determined that defendant exhibited some intellectual impairment, but was not hindered from being able to appreciate the wrongfulness of his actions, comport himself appropriately in court, understand consequences, and assist his attorney in his defense. Furthermore, the two evaluators reported that defendant demonstrated suspicious inconsistencies in his memory and test scores such that both suspected that he was exaggerating his cognitive limitations.

At defendant's plea hearing, the prosecutor and defense counsel were present in the courtroom while defendant was present via Zoom. The prosecutor informed the court that defendant would plead to one count of CSC-I and he would dismiss the other CSC-I count. Moreover, defendant's sentence would be the 25-year mandatory minimum and the maximum would be 35 years.[2]

Defense counsel noted that he and defendant had "talked quite a bit" and that defendant "approached [him] about pleading guilty but mentally ill[.]"[3] Defendant replied: "Yes." Defense counsel then explained that he had informed defendant about "the good and the bad as opposed to pleading no contest . . . ." Defendant confirmed that they had. Defense counsel then presented the reports to the court to determine whether it would accept a plea of guilty but mentally ill, after confirming that defendant wanted him to do so. The trial court then reviewed the competency evaluations and risk-assessment reports. Because two of the three evaluations opined that defendant was competent and because there was evidence that defendant feigned cognitive impairments, the trial court found that defendant was not mentally ill. After defense counsel confirmed that defendant had heard the court's ruling, he asked whether defendant was "ready to

---

[2] The prosecutor had made an offer for defendant to plead guilty with a 25 to 35 year sentence while the matter was in the district court.

[3] Eleven days before the plea hearing, defense counsel filed a memorandum of law regarding a potential plea of guilty but mentally ill.

move forward with a no contest plea, as they had discussed. Defendant affirmed that he was. Thereafter, defendant pleaded no contest to one count of CSC-I.

Before sentencing, the probation department prepared a presentence investigation report (PSIR) detailing defendant's background, the circumstances of this offense, and the defendant's prior history. Defendant had slow motor skill development as a toddler and by age five was "kicked out of Head Start due to behavioral problems and was placed in a . . . class" for the impaired. Defendant was treated for attention-deficit hyperactivity disorder and "autistic spectrum disorder." At age nine, "defendant was diagnosed with Oppositional Defiant Disorder." Defendant was twice admitted for treatment at ages 10 and 11 "for outbursts, rage, and deviancy." Defendant had services through the county's community mental health program from the ages of 6 to 18. Defendant then received services through another program. Defendant also received Social Security Disability benefits from the age of four.

Defendant earned a high school diploma in 2014 with "much of his schooling through special education." Defendant also attended additional schooling in the two years that followed. He claimed that those schools focused on teaching independent living skills, including cooking and cleaning.

Defendant had a prior juvenile history. As an adult, defendant had an indecent exposure conviction in 2016 and was placed on probation.

At sentencing on March 22, 2022, defendant appeared via videoconference technology from jail. The trial court gave defendant the opportunity to make a statement. Defendant described himself as "a nice guy," that he would not do what he was accused of, adding that he was liked by neighbors and friends such that he should not be sentenced harshly.

The trial court also gave the victim's mother the opportunity to read her victim-impact statement. She recounted that the victim was not only psychologically and emotionally damaged from defendant's assaults, but also physically impacted. More specifically, the victim no longer trusted men, required therapy,[4] and suffered from a lifelong sexually transmitted disease.[5]

Defense counsel urged the trial court to consider deviating from the 25-year minimum sentence mandated by statute because of defendant's cognitive limitations as a mitigating factor. The trial court acknowledged that defendant could benefit from alternative programming and services, but it was bound by statute to sentence defendant to a minimum term of 25 years' imprisonment.

Defendant later moved to withdraw his plea or for an evidentiary hearing, arguing that his counsel was ineffective for not advising him to seek a conditional plea that would have enabled

---

[4] The victim's mother had earlier reported that the victim had difficulty showing physical affection to her family members, had experienced depression and post-traumatic-stress-disorder symptoms, had been in counseling since the offense, and continued to receive services.

[5] Defendant denies having a sexually transmitted disease and there is a court order for counseling and testing for disease/infection in the file.

him to preserve a claim on appeal regarding the trial court's finding that defendant was competent and not mentally ill. The trial court denied defendant's motion, finding that there was not sufficient precedent to support a claim that a cognitive impairment could function as a mitigating factor when the sentence was statutorily mandated. This appeal followed.

## II. SENTENCING

Defendant argues that the statutory mandate for a minimum sentence of 25 years is cruel and/or unusual punishment and disproportionate to the offense and defendant as an individual with diminished intellectual capacity.[6] Defendant also argues that his right to be physically present at sentencing was violated such that he is entitled to a remand for resentencing. We disagree.

## A. STANDARDS OF REVIEW

"We review the reasonableness of a sentence for an abuse of the trial court's discretion." *People v Walden*, 319 Mich App 344, 351; 901 NW2d 142 (2017). An appellate court reviews de novo questions of constitutional law. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). "Statutes are presumed to be constitutional, and the courts have a duty to construe a statute as constitutional unless its unconstitutionality is clearly apparent." *People v Benton*, 294 Mich App 191, 203; 817 NW2d 599 (2011) (quotation marks and citations omitted). "Interpretation of court rules presents a question of law that we review de novo." *People v Blanton*, 317 Mich App 107, 117; 894 NW2d 613 (2016). Finally, we review for clear error the trial court's factual findings. *People v Copeland*, ___ Mich App ___, ___; ___ NW2d (2024) (Docket No. 363925); slip op at 3. A trial court's factual findings at sentencing are clearly erroneous if this Court is left with a definite and firm conviction that the lower court made a mistake. *People v Armstrong*, 305 Mich App 230, 242; 851 NW2d 856 (2014).

## B. PUNISHMENT

The Eighth Amendment to the United States Constitution prohibits the infliction of "cruel and unusual punishments[.]" US Const, Am VIII. The Michigan Constitution, on the other hand, provides that "cruel or unusual punishment . . . shall not be inflicted[.]" Const 1963, art I, § 16. "In an appropriate case, the Michigan Constitution's prohibition against 'cruel or unusual' punishment may be interpreted more broadly than the Eighth Amendment's prohibition against 'cruel and unusual' punishment." *Carlton v Dep't of Corrections*, 215 Mich App 490, 505; 546 NW2d 671 (1996).

"Statutes are presumed to be constitutional, and the courts have a duty to construe a statute as constitutional unless its unconstitutionality is clearly apparent." *Benton*, 294 Mich App at 203 (quotation marks and citation omitted). "A party challenging the constitutionality of a statute has

---

[6] In *People v Cobbs*, 443 Mich 276, 286; 505 NW2d 208 (1993), our Supreme Court "caution[ed] that a defendant who pleads guilty or nolo contendere with knowledge of the sentence, and who later seeks appellate sentence relief . . ., must expect to be denied relief on the ground that the plea demonstrates the defendant's agreement that the sentence is proportionate to the offense and the offender."

the burden of proving its invalidity." *Jarrell*, 344 Mich App at 482. "Such a challenge can be brought in one of two ways: by either a facial challenge or an as-applied challenge." *Id.* (quotation marks and citation omitted). "A facial challenge involves a claim that there is no set of circumstances under which the enactment is constitutionally valid, while an as applied challenge considers the specific application of a facially valid law to individual facts[.]" *Id.* (quotation marks and citations omitted).

"[T]he Eighth Amendment's ban on cruel and unusual punishments 'prohibits . . . sentences that are disproportionate to the crime committed[.]' " *Ewing v California*, 538 US 11, 22; 123 S Ct 1179; 155 L Ed 2d 108 (2003), quoting *Solem v Helm*, 463 US 277, 284; 103 S Ct 3001; 77 L Ed 2d 637 (1983). "[T]hree factors may be relevant to a determination of whether a sentence is so disproportionate that it violates the Eighth Amendment: '(i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions.' " *Id.*, quoting *Solem*, 463 US at 292.

"[T]o evaluate the proportionality of a punishment under Michigan's Cruel or Unusual Punishment Clause," a court considers:

> (1) the severity of the sentence relative to the gravity of the offense; (2) sentences imposed in the same jurisdiction for other offenses; (3) sentences imposed in other jurisdictions for the same offense; and (4) Michigan's traditional goal of and preference for rehabilitation. [*People v Taylor*, ___ Mich ___, ___; ___ NW3d ___ (2025) (Docket No. 166428); slip op at 25.[7]]

These factors seek to strike a balance among the individual offender's rehabilitation, "society's need to deter similar proscribed behavior in others, and the need to prevent the individual offender from causing further injury to society." *People v Lorentzen*, 387 Mich 167, 180; 194 NW2d 872 (1972). A penalty which is "unjustifiably disproportionate to the crime for which it is imposed" is "cruel or unusual." *People v Bullock*, 440 Mich 15, 30; 485 NW2d 866 (1992).

When a person 17 years of age or older engages in sexual penetration of a child who is under 13 years of age, the Legislature provided for a penalty of "imprisonment for life or any term of years, but not less than 25 years." Thus, "[a] CSC-I offense committed by an individual 17 years old or older against an individual under the age of 13 carries a 25-year mandatory minimum sentence." *People v Beck*, 510 Mich 1, 27; 987 NW2d 1 (2022), citing MCL 750.520b(2)(b). This Court has previously held that the imposition of a 25-year mandatory minimum sentence for CSC-I is not cruel and/or unusual punishment. *Benton*, 294 Mich App at 204-207. This Court has also held that a 25-year mandatory minimum sentence for CSC-I applied to a 17½-year-old juvenile with various "intellectual difficulties, and ongoing treatment for various mental-health disorders" was not unconstitutional under either the Eighth Amendment or Const 1963, art 1, §16. *People v Payne*, 304 Mich App 667, 674-676; 850 NW2d 601 (2014), overruled in part on other grounds by *People v Lockridge*, 498 Mich 358 (2015). We are bound to follow *Benton* and *Payne*.

---

[7] This test was first established in *People v Lorentzen*, 387 Mich 167, 177-181; 194 NW2d 827 (1972), and reaffirmed in *People v Bullock*, 440 Mich 15, 33-34; 485 NW2d 866 (1992).

MCR 7.215(J) ("A panel of the Court of Appeals must follow the rule of law established by a prior published decision of the Court of Appeals issued on or after November 1, 1990, that has not been reversed or modified by the Supreme Court, or by a special panel of the Court of Appeals as provided in this rule."). Nevertheless, defendant contends that *Benton* is distinguishable and that *Payne* was decided before recent changes in caselaw involving juveniles sentenced to mandatory life imprisonment without the possibility for parole for first-degree murder. Defendant contends that those recent cases support his argument that his sentence is disproportionate because of his alleged cognitive impairments. We disagree.

Regarding intellectual capacity and mental illness, "[o]ur justice system generally regards an offender who commits a crime while suffering from undiagnosed or untreated mental illness as *less* deserving of the harshest punishments[.]" *People v Bennett*, 335 Mich App 409, 429; 966 NW2d 768 (2021). "Furthermore, although untreated mental illness may predispose a person to violent behavior, successfully treated mental illness does not." *Id*. at 430.

In *Atkins v Virginia*, 536 US 304, 320-321; 122 S Ct 2242; 153 L Ed 2d 335 (2002), the United States Supreme Court held that imposing the death penalty on "mentally retarded criminals" is excessive and, therefore, unconstitutional under the Eighth Amendment. Ten years later, the United States Supreme Court ruled that imposing a *mandatory* sentence of life without the possibility of parole for those under 18 who commit murder violated the Eighth Amendment's prohibition on cruel and usual punishment. *Miller v Alabama*, 567 US 460, 465; 132 S Ct 2455; 183 L Ed 2d 407 (2012). Ten years later, the Michigan Supreme Court held that *mandatory* life-without-parole sentences for first-degree murder applied to those under 19 years of age violated the principle of proportionality, and thus, constituted cruel punishment under the state Constitution. See *People v Parks*, 510 Mich 225, 268; 987 NW2d 161 (2022). And just earlier this year, the Michigan Supreme Court extended *Parks*' holding to those under 21 years of age. See *Taylor*, ___ Mich ___, ___; slip op at 2, 13, 37-38. These two recent cases relied upon scientific research on late-adolescent brain development that indicated the same cognitive limitations that minors bear are applicable to those in later adolescence. See *id*. at ___; slip op at 15-17, 37; see also *Parks*, 510 Mich at 248-252, 466.

However, those cases involved the death penalty and *mandatory* life-without-parole sentences for juveniles convicted of first-degree murder, leaving open the possibility that a court could sentence a juvenile or late adolescent to life without the possibility of parole after consideration of the *Miller* factors. *Miller*, 567 US 479-480; *Taylor*, ___ Mich ___, ___; slip op at 13 ("We do not foreclose the possibility that [a life-without-parole sentence] could be an appropriate punishment under rare circumstances . . . ."); *Parks*, 510 Mich at 255, 267. And, as the trial court observed, there is no express, precedential link between the caselaw defendant relies upon and his claim that mental illness or intellectual disability render the mandatory 25-year minimum sentence cruel or unusual.[8] In fact, this Court rejected applying *Miller* in this context,

---

[8] Certainly, a mental illness or intellectual disability can serve as an affirmative defense to a prosecution for a criminal offense *if* one "lacks substantial capacity either to appreciate the nature and quality or wrongfulness of his . . . conduct or to conform his . . . conduct to the requirements of the law." MCL 768.21a(1). And, a defendant must be competent to stand trial. MCL 330.2020.

determining that it could not "conclude that the 25-year mandatory minimum prescribed by MCL 750.520b(2)(b) is cruel or unusual when applied to a juvenile offender such as defendant." *Payne*, 304 Mich App at 675. This Court explained that while "a minimum sentence of 25 years is unquestionably substantial, it is simply not comparable to the sentences of death and life without parole found unconstitutional when applied to juveniles . . . ." *Id.* Additionally, unlike the juvenile at issue in *Miller*, where the mandatory sentence precluded "any meaningful opportunity for release based on demonstrated maturity or rehabilitation," "the 25-year mandatory minimum sentence at issue [in MCL 750.520b(2)(b) . . . allow[ed] for review of an individual defendant's progress toward rehabilitation and provide[d] a meaningful opportunity for release on parole." *Id.* at 675-676.

In this case, defendant twice sexually assaulted a 12-year-old girl in her own bedroom, giving her a chronic, sexually transmitted disease.[9] The devastating emotional, physical, and psychological impacts of defendant's actions are clear on this record. The gravity of defendant's offense far outweighs the severity of his sentence considering the lifelong harm that defendant has inflicted upon the victim. *Benton*, 294 Mich App 204-205. Moreover, the 25-year minimum sentence is proportionate in relation to sentences in other jurisdictions and other offenses in Michigan. *Id.* at 206-207. Indeed, as this Court observed in *Benton*, "[t]he unique ramifications of sexual offenses against a child preclude a purely qualitative comparison of sentences for other offenses to assess whether the mandatory 25-year minimum sentence is unduly harsh." *Id.* at 206. Finally, the statute affords defendant a meaningful opportunity to obtain release based on rehabilitation. *Payne*, 304 Mich App at 675-676. For these reasons, defendant's 25-year mandatory minimum sentence was not cruel and unusual under the Eighth Amendment and was not cruel or unusual under the Michigan Constitution.

## C. PHYSICAL PRESENCE AT SENTENCING

Next, defendant argues that the trial court committed a structural error by sentencing him via videoconference technology,[10] thereby violating his right to be physically present at a critical stage in the proceedings. Although we agree that the trial court erred by not obtaining a waiver from defendant before sentencing him in this manner, he is not entitled to resentencing.

---

In this case, however, two evaluators concluded that defendant was competent and not legally insane.

[9] See footnote 5.

[10] At the time defendant was sentenced, MCR 6.006(E) provided:

> Notwithstanding any other provision in this rule, until further order of the Court, AO No. 2012-7 is suspended and trial courts are required to use remote participation technology (videoconferencing under MCR 2.407 or telephone conferencing under MCR 2.406) to the greatest extent possible. Any such proceedings shall comply with the requirements set forth in MCR 2.407(G).

MCR 2.407(G)(3) required the court to "[e]nsure that any such proceedings [were] consistent with a party's Constitutional rights . . . ."

"[A] criminal defendant has a constitutional right to be present at any stage of a trial during which substantial rights might be adversely affected, including during sentencing." *People v Anderson*, 341 Mich App 272, 281; 989 NW2d 832 (2022). Under a prior version of MCR 6.006(A), which omitted felony sentencing from the types of proceedings at which videoconferencing technology could be used, this Court recognized that defendants convicted of felonies are uniquely entitled to be present at sentencing to uphold the dignity and fundamental fairness of the proceedings. *People v Heller*, 316 Mich App 314, 317321; 891 NW2d 541 (2016).

Therefore, a trial court's failure to obtain a waiver of this right from defendant is error; however, the error is not structural because:

> (1) the right to be physically present at sentencing is designed to protect the defendant from an erroneous sentence, and not necessarily to protect some other interest, (2) the effects of sentencing a defendant remotely are not too difficult to measure, and (3) the error will not always result in fundamental unfairness. [*Anderson*, 341 Mich App at 284.]

Indeed, when remote participation does not impact a defendant's ability to present evidence or arguments or otherwise discernably impact the fairness of the proceedings, a trial court's failure to obtain a waiver before sentencing a defendant remotely is not structural, and, therefore, not a constitutional violation warranting a remand. See *id*. at 285.

In this case, the record does not show that the trial court properly obtained a waiver from defendant regarding his right to be physically present at sentencing. See *id*. at 283. Accordingly, the trial court erred by sentencing defendant remotely. See *id*. Nevertheless, defendant was not prevented from actual participation in the sentencing. See *id*. at 285. Defendant and his counsel were able to communicate, counsel presented arguments on defendant's behalf, counsel addressed alleged inaccuracies in the jail credit calculation, and defendant himself gave a statement asking for a lighter sentence. See *id*. at 285, 287. Furthermore, defendant and his counsel did not object to defendant's physical absence. See *id*. Aside from defendant's physical absence, defendant's sentencing was conducted in a constitutional manner. See *id*. at 285-286. In fact, the sentencing court imposed the sentence that the parties agreed upon and that was proscribed by the Legislature. MCL 750.520b(2)(b). See also *People v Murray*, 341 Mich App 205, 216; 989 NW2d 284 (2022) ("[I]n enacting MCL 750.520b(2)(b), the Legislature properly exercised the authority vested in it by Const 1963, art 4, § 45 to provide penalties for criminal offenses[.]"). Simply put, "[t]here is no evidence, inference, or indication that defendant's treatment likely would have been different had he been face-to-face with the sentencing judge." *Anderson*, 341 Mich App at 287. Defendant is not entitled to further relief. *Id*. at 287-288.

## III. VOLUNTARINESS OF PLEA

Defendant also contends that his plea was not made knowingly and freely because he did not understand the proceedings. In the alternative, defendant argues that he was denied the effective assistance of counsel when counsel failed to insist on a conditional plea and appeal the trial court's finding that he was competent. We disagree.

## A. PLEA PROCEEDINGS

"We review for an abuse of discretion a trial court's ruling on a motion to withdraw a plea." *People v Meeker*, 340 Mich App 559, 563; 986 NW2d 622 (2022) (quotation marks and citation omitted). "An abuse of discretion occurs when the trial court's outcome falls outside the range of reasonable and principled outcomes." *Id*. An appellate court reviews de novo questions of constitutional law. *LeBlanc*, 465 Mich at 579. "The trial court's factual findings are reviewed for clear error." *Meeker*, 340 Mich App at 563. "A finding of fact is clearly erroneous if, after a review of the record, this Court is left with a definite and firm conviction that a mistake was made." *Id*.

"A guilty or no-contest plea constitutes a waiver of several constitutional rights and thus triggers specific protections for the defendant." *People v Samuels*, 514 Mich 120, 129; ___ NW3d ___ (2024) (quotation marks and citation omitted). Under the Due Process Clause of the Fourteenth Amendment to the United States Constitution, a proper waiver of these rights requires that the plea be made knowingly and voluntarily. See *id*. "This requirement mandates not only that a defendant enter into a plea bargain of their own free will, but that their decision is a knowing, intelligent act done with sufficient awareness of the relevant circumstances and likely consequences." *Id*. (quotation marks, citation, and brackets omitted).

Under MCR 6.302(A), a "court may not accept a plea of guilty or nolo contendere unless it is convinced that the plea is understanding, voluntary, and accurate. Before accepting a plea of guilty or nolo contendere, the court must place the defendant . . . under oath and personally carry out subrules (B)-(E)." Additionally, the trial court must adhere to MCR 6.302(C)'s requirement that defendant be asked "whether anything has been promised to him beyond what is reflected in the plea agreement, whether anyone has threatened the defendant, and whether it is the defendant's own choice to plead guilty." *Samuels*, 514 Mich at 129 (quotation marks and citation omitted).

"A defendant's ability to withdraw a guilty or nolo contendere plea is governed by the Michigan Court Rules," which do not provide an absolute right to withdraw an accepted guilty plea. *Blanton*, 317 Mich App at 117. Under MCR 6.310(C), a defendant may succeed on a motion to withdraw a plea if the defendant shows "that there was an error in the plea proceeding that would entitle the defendant to have the plea set aside" by the trial court. But, a defendant "may not create a factual dispute by submitting an affidavit that contradicts his or own sworn testimony" at a plea hearing. *People v Armisted*, 295 Mich App 32, 49; 811 NW2d 47 (2011).

In the present case, defendant contends that his plea was coerced because he did not understand the proceedings due to his intellectual disabilities. Defendant points to his affidavit and competency evaluations. Defendant's affidavit states that "[h]e did not understand any of the court proceedings in this case" and "[h]e merely did what his attorney told him to do during the proceedings." Defendant's appellate brief further suggests that defense counsel made "unfulfilled promises or misleading statements" to induce defendant's plea. Defendant adds that he "has very little education and numerous disabilities," so it was "particularly important that the court be certain that his plea to such a serious offense was knowing, intelligent[,] and voluntary."

Review of the record refutes defendant's contentions. At the plea-taking, the court placed defendant under oath. MCR 6.302(A). It asked defendant whether he understood that he was

waiving certain rights, like the right to a trial. When defendant stated that he did not understand this waiver, the trial court later detailed what the waiver involved. And defendant specifically agreed to waive his right to have a trial, including his rights to be presumed innocent, to call or confront witnesses, to testify at trial, to say nothing at trial, which the trier of fact could not use against him, and to have the assistance of counsel at trial and even after trial, if necessary. MCR 6.302(B)(3). Defendant also affirmed that he understood the nature of the charge and the potential penalties, including life imprisonment and the 25-year mandatory minimum sentence. MCR 6.302(B).

The trial court informed defendant that he was "waiving the right to claim at a later date and time that it wasn't [his] choice to" enter a no-contest plea. MCR 6.302(B)(4) and (C)(5)(c). In fact, the court explained that defendant could not "come back and say, "Wait, I didn't mean to enter a guilty plea. That was somebody else's idea." *Id*. When asked whether he understood, defendant replied affirmatively. The court further explained: "[Y]ou'll also be waiving the right to come back at a later date and time and say there were other promises, or threats, or inducements to you except what's already been placed on the record." MCR 6.302(B)(4) and (C)(5)(a)-(b). Asked if he understood that, defendant responded affirmatively.

The court asked defendant whether he had any questions. Defendant said he did. The court asked what it was and defendant asked whether the information in the reports and risk assessment would help him "to get lesser time or not?" The court replied that it would not; however, the reports could go to the Department of Corrections. Defendant then wanted to know if he would be in prison when the reports were read and the court explained that defense counsel would want to ensure that they went to the author of the PSIR. When asked if that made sense, defendant responded affirmatively.

Asked if he had any other questions, defendant said, "[s]o I will not have to do the whole 25 max?" The court answered: "No. That's a mandatory sentence. That's why I read it to you. It's got to be 25 years. It's a mandatory minimum." MCR 6.302(B)(2). Thereafter, the court clarified again that defendant was facing a 25-year minimum with a 35-year maximum sentence. *Id*. Defendant then inquired about his "autism and stuff with that[.]" The court again explained that they were "referenced in" the reports, which defense counsel had and could be brought to the attention of the PSIR writer along with the Department of Corrections. Defendant said: "Okay," adding that he had never violated probation.

The court asked if defendant was ready to proceed with the plea and defendant replied affirmatively. Defendant again affirmed that he wanted to give up his right to a trial and all the rights that went with it. MCR 6.302(B)(3).

Asked how he wanted to plead, defendant answered: "No contest." The reason provided by his attorney for the no contest pleas was defendant's potential civil liability. The court found that to be an appropriate basis to accept a no contest plea. MCR 6.302(D)(2)(a). The police reports were used to establish the factual basis for defendant's plea. MCR 6.302(D)(2)(b). After review, the court determined that the factual basis was sufficient. *Id*.

Finally, the court asked defendant whether "anybody else promised [him], or threatened [him], or did anything else to [him] to get [him] to enter [the] no contest plea today?"

-10-

MCR 6.302(C)(5)(a)-(c). Defendant responded: "No." Moreover, neither the prosecutor nor defense counsel was "aware of any other promises, threats, or inducements[.]" MCR 6.302(E)(1).

The court again asked defendant if he had any questions. Defendant asked about the risk assessment, wherein it stated that he had "the mentality of an 11-year-old," and what that would affect. The court explained that it would not affect what occurred that day, but could be included in the PSIR and accompany defendant to the Department of Corrections. Defendant replied: "Okay."

The court then asked whether defendant wanted the court "to accept [his] no contest plea to count one . . . [CSC-I][.]" Defendant answered affirmatively and the court accepted defendant's plea, determining that it was "freely, accurately, and voluntarily" made.

Initially, we conclude that defendant's affidavit, claiming that he did not understand any of the proceedings and that his attorney coerced him to accept the plea offer, cannot override his sworn testimony that he understood the proceedings, that it was his own choice to plead no contest, and that no one had threatened or coerced him into accepting the plea. See *Armisted*, 295 Mich App at 49. Moreover, defendant's reference to his evaluations is likewise insufficient to establish that his lower mental capacity hindered him from making an understanding plea, despite repeatedly and plainly answering questions under oath. *Id*. Regardless, "[l]ow mental ability in and of itself is insufficient to establish that a defendant did not understand his rights." See e.g., *People v Cheatham*, 453 Mich 1, 36; 551 NW2d 355 (1996). "A defendant's IQ [Intelligence Quotient] . . . is only one factor in the 'totality of circumstances' [that] a court must consider in assessing whether a defendant has the requisite level of comprehension." *Id*. Notably, two of the evaluators opined that defendant appeared to feign a lower cognitive capacity. And, "[t]he record in this case does not indicate that defendant presents any impairment in adaptive functioning that would indicate" that defendant was mentally incapacitated to a degree that hindered his ability to knowingly waive his rights, see *id*. at 36-40, and enter a no-contest plea. Defendant demonstrated an unhindered capacity to knowingly waive his rights by offering "responsive and appropriate" answers and exhibiting normal behaviors and hygiene. *Id*. at 39-40.

In sum, defendant fails to show "that there was an error in the plea proceeding that would entitle [him] to have the plea set aside" by the trial court. See *Blanton*, 317 Mich App at 117. Accordingly, the trial court did not abuse its discretion when it denied defendant's motion to withdraw his plea.

## B. ASSISTANCE OF COUNSEL[11]

"The question whether defense counsel performed ineffectively is a mixed question of law and fact; [an appellate court] reviews for clear error the trial court's findings of fact and reviews de novo questions of constitutional law." *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012).

---

[11] Although this issue was not raised in the Statement of Questions Presented, MCR 7.212(C)(5), it was raised before and decided by the trial court so we will address it.

-11-

To succeed on a claim of ineffective assistance of counsel a defendant must show that his attorney's performance was objectively unreasonable considering prevailing professional norms and that he was prejudiced by the deficient performance. *People v Carbin*, 463 Mich 590, 599-600; 623 NW2d 884 (2001). "In the context of pleas[,] a defendant must show the outcome of the plea process would have been different with competent advice." *People v White*, 331 Mich App 144, 148-149; 951 NW2d 106 (2020) (quotation marks and citation omitted).

Defendant first contends that counsel was ineffective because defendant "could not understand the proceedings and his attorney told him to plead." As already explained, to the extent that defendant asserts that defense counsel directed him to plead no-contest, the record plainly contradicts this claim. See *Armisted*, 295 Mich App at 46-49. The plea transcript shows defense counsel was in the courtroom while defendant was present via Zoom. It further shows that defendant, defense counsel, and the prosecutor had agreed that defendant could seek a plea of guilty but mentally ill, as defendant had expressly requested. After the trial court determined that it would not accept defendant's plea to being guilty but mentally ill, defense counsel explained the trial court's findings to defendant to confirm that he understood before asking defendant whether he was prepared "to move forward with a no-contest plea" "like we discussed before . . . ." Defendant affirmed that he was. Therefore, the record demonstrates an objectively reasonable strategy by which defendant and defense counsel sought to enter a plea of guilty but mentally ill, and, if the trial court rejected the same, defendant would plead no-contest to one count of CSC-I in exchange for dismissal of the other count of CSC-I. See *Trakhtenberg*, 493 Mich at 52. On this record, defendant has not met his burden of establishing that counsel's performance was deficient and that he was prejudiced.

Defendant next contends that counsel was ineffective because he "should have insisted on a conditional plea and should have appealed the issue of his competency." Defendant asserts that he was prejudiced by counsel's deficient performance because "there is a reasonable probability that the trial court's findings of competency and mental illness would have been reversed." We disagree.

Under MCR 6.301(C)(2), "[a] defendant may enter a conditional plea of guilty[.]" "A conditional plea preserves for appeal a specified pretrial ruling or rulings notwithstanding the plea-based judgment and entitles the defendant to withdraw the plea if a specified pretrial ruling is overturned on appeal." *Id*.

As explained in the Staff Commentary, MCR 6.302(C)(2)

incorporates and expands the conditional plea procedure authorized in *People v Reid*, 420 Mich 326 (1984), by which a defendant, with the agreement of the prosecutor and the court, may enter a plea of guilty while preserving, for appeal purposes, a challenge to a pretrial ruling that might otherwise be waived by the plea. This subrule expands the availability of the conditional plea procedure to the other forms of plea available under these rules. It also permits a conditional plea to be used to preserve challenges to one or more pretrial rulings and places no limitation on the type of ruling that may be preserved. Consistent with *Reid*, however, it requires that the defendant be permitted to withdraw the plea if any ruling preserved by this procedure is overturned on appeal. Furthermore, the

subrule requires that any challenged ruling being preserved for appeal be "specified orally on the record or in a writing made a part of the record." The availability of this procedure, however, should not be construed as precluding a defendant from raising on appeal issues that are not waived by entry of a plea. The question of what issues are not waived by a plea is addressed by case law. See, for example, *People v New*, 427 Mich 482 (1986).

This Court has previously held that a defendant's later guilty plea does not waive an alleged error arising from a prior competency determination. *People v Parney*, 74 Mich App 173, 175-176; 253 NW2d 698 (1977). Thus, defendant cannot establish that plea-taking counsel performed deficiently by failing to request a conditional plea. And, in any event, for defendant to succeed on his claim that counsel performed deficiently by failing to advise him that he could enter a conditional plea to preserve his ability to challenge the trial court's competency determination on appeal, defendant had to provide evidence that the trial court and the prosecutor would have agreed to the proposed conditional plea. See *People v Thurmond*, 348 Mich App 715, 744-746; 20 NW3d 311 (2023). In this case, the record reflects that the prosecutor's only plea offer was for defendant to plead guilty but mentally ill or no contest to one count of CSC-I in exchange for dismissal of the other CSC-I charge with a sentence of 25 to 35 years' imprisonment. Accordingly, defendant is not entitled to relief on this claim.

Affirmed.


/s/ Kathleen A. Feeney
/s/ Stephen L. Borrello
/s/ Anica Letica